Brian A. Wilkins
PO Box 66
Tempe, AZ 85280
480-529-0964
brianw@operation-nation.com

FILED ___ LODGED
___ RECEIVED ___ COPY

JUN 2 9 2009

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ M DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BRIAN A. WILKINS,<br>　　Plaintiff,<br><br>vs.<br><br>MARICOPA COUNTY,<br>JOSEPH M. ARPAIO, in his individual and official capacity as Maricopa County Sheriff,<br>X-RAY TECHNICIAN OF MARICOPA COUNTY JAIL, in her individual and official capacity.<br>　　Defendants. | CV: CV-09-1380-PHX-LOA<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND OTHER DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS INCLUDING BUT NOT LIMITED TO RIGHTS GUARANTEED BY THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION (DEPRIVATION OF RIGHTS UNDER COLOR OF STATE LAW (42 U.S.C. § 1983); INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS |

## INTRODUCTION

1. This complaint is filed with respect to violations of the Plaintiff's constitutional rights under color of state law by said Defendants, brought pursuant to *42 U.S.C. § 1983*, for remedies for the Defendants' deprivation of Plaintiff's civil rights. The subject matter jurisdiction is invoked under *28 U.S.C. § 1343* (civil rights) and *28 U.S.C. § 1331* (federal question). The pendent jurisdiction of this court is also invoked. The incidents that form the basis of this lawsuit occurred in Maricopa County, Arizona. The Plaintiff currently resides and has resided in Maricopa County throughout the period of time of this complaint.

## PARTIES

2. Brian A. Wilkins is a resident of Maricopa County and the state of Arizona. He currently has no physical address of residence.

3. Maricopa County is a corporate, political, municipal entity contained within he state of Arizona.

4. Joseph M. Arpaio is the Sheriff of Maricopa County and responsible for the operation and administration of the Maricopa County Jails (*11 A.R.S. § 441 (A)(5) & 31 A.R.S. § 101*).

5. X-Ray Technician of Maricopa County Jail is an employee for Maricopa County jail medical. Plaintiff moves the court for discovery to obtain the true identity of said defendant (*Wakefield v. Thompson, 177 F. 3d 1160, 1163 [9th Cir. 1999]*), and will amend complaint accordingly once the identity is discovered. Plaintiff, in same discovery motion, requests access to any and all medical records Maricopa County has for him. For this initial complaint, said defendant will be referred to as "Technician."

## FACTUAL HISTORY

6. The Plaintiff was taken to a Maricopa County Jail called "Lower Buckeye" on July 22, 2008, after an arrest by the Tempe Police Department. The City of Tempe and it's Police Department are the subject of a separate lawsuit filed in this court

Complaint for Declaratory, Injunctive, and Other Relief - 2

by the Plaintiff (*CV-09-752-PHX-MHM*), with respect to several constitutional rights violations and their race-based policies and practices in arresting citizens of the city. Plaintiff was detained, as a pre-trial, non-convicted inmate, until September 17, 2009; a total of 58 days.

7. Upon booking into a jail on 4th Avenue in downtown Phoenix, Maricopa County collected information from the Plaintiff about his medical history and medications he regularly takes. The Plaintiff gave the Defendants the name of the pharmacy he gets his medication for hypertension and the hospital which he was treated two weeks prior for a broken hand bone. Plaintiff was then transferred to the "Lower Buckeye" jail on July 23, 2008.

8. While detained in "Lower Buckeye Jail," the Plaintiff, on July 25, 2008, around 10:30 a.m., was forcibly given an X-ray against his will, on his broken hand. The X-ray was unnecessary as the Plaintiff had already been wearing a splint on his hand and had X-rays done at Banner Medical Center in Mesa, AZ and at Arizona State University in early July, confirming his hand was broken. Defendant Maricopa County had access to these records, but wantonly, intentionally, and maliciously exposed the Plaintiff to high levels of radiation without any sort of protection.

9. The Plaintiff had no say in refusing the X-ray done by Defendant "Technician." As in all U.S. medical facilities, patients are given some sort of protection in the form of a lead apron or garment, to guard against radiation poisoning and/or overexposure. Defendant "Technician" placed the Plaintiff under a large x-ray machine with no protection at all.

10. When the Plaintiff refused the x-ray because of the obvious dangers and refusal of basic safeguards, Defendant "Technician" replied, "I already started so I'm finishing." The Plaintiff said to Defendant "Technician" he would like to have children someday and wanted some sort of protection, otherwise, did not want the X-ray done at all. Defendant "Technician" replied, "well you should stay out of jail if you want protection." Though the Plaintiff knew bodily harm was about to

occur with the X-ray being done, there was nothing he could do, as a Maricopa County jail guard stood by with a Taser device, ready to use if the Plaintiff moved away from the X-ray machine. Plaintiff was ordered to "be still" until Defendant "Technician" was finished.

11. Maricopa County's jail medical policies and customs of forcing pre-trial, non-convicted inmates in their jails to participate in extremely unsafe, involuntary medical experiments violated the Plaintiff's right to be free from cruel and unusual punishment. Several other doctors for Maricopa County, while in the jail, continually tried to force the Plaintiff to allow them to stick needles in him so "we can figure out why you have high blood pressure." Plaintiff was threatened with "solitary confinement" if he continued to refuse to allow Maricopa County doctors to stick needles in him. Maricopa County doctors eventually gave up trying to force needles into the Plaintiff when he told them to simply put him in solitary confinement because he was not going to allow them to stick unknown bio-chemicals into his body.

12. Though the Plaintiff informed Maricopa County Jail officials he suffered from hypertension and informed them of his family history of strokes (sister and father died young of strokes), jail officials refused repeated requests by the Plaintiff to get him the daily medication he had taken the previous five years. The Plaintiff provided the jail the name of his pharmacy and doctor the day he was booked, but was refused the medication the entire 58 days he was in jail. Plaintiff was continually told to "fill out another form" when he inquired about his medication. The Plaintiff's blood pressure exceeded 155/110 throughout most of the 58 days, a fatal level.

13. Even after the Plaintiff was exposed to high levels of radiation with the forced X-ray, Maricopa County medical still refused to give him a splint for his broken hand, causing the Plaintiff severe pain without any protection around the broken bone in his hand, and caused his hand to heal improperly.

14. Throughout the entire 58 days of confinement in "Lower Buckeye Jail," the Plaintiff was given moldy bread, spoiled, smelly meat substances, and rotten fruits for a "breakfast meal," and some sort of concoction which can only be described as vomit-looking, for a "dinner" meal, per the policy of Maricopa County Sheriff Joseph M. Arpaio, who administers and operates the jail system. Plaintiff had no choice but to force down whatever parts of the "food" he could, or he would starve to death in the jail. This policy of serving inedible food to a pre-trial, non-convicted detainee violated the Plaintiff's right to be free from cruel and unusual punishment.

15. The Plaintiff also had the food he bought with his own money from the "inmate canteen" stolen and damaged by jail guards on one occasion, and was forced several times to stand in small holding cells with upwards of 60 sick, coughing, bleeding inmates who could not move because of the crowding.

16. The water supplied to the Plaintiff at "Lower Buckeye Jail" comes from a toilet and looks very cloudy and polluted. However, you either drank the water or died of dehydration.

17. The Plaintiff was forced several times, per Maricopa County Jail policy, to sit outdoors on hot concrete wearing only boxer shorts for periods of time ranging from 30 minutes to 2 hours. The area the Plaintiff was forced to sit was not only hot enough to cause first and second degree burns, but had swarms of crickets, beetles, and other insects crawling all over the place.

18. The Plaintiff was forced several times to strip naked in front of male and female guards, and ordered to "lift your sack," "lift your penis," and "spread your cheeks." One jail guard placed his hands on the Plaintiff's genitals because, as the guard put it, "I can't see underneath there."

19. On July 29, 2008, when the Plaintiff was returned to "Lower Buckeye Jail" after a court appearance, the cell which he occupied had been completely ransacked by jail guards, with his bedding thrown in the toilet. The Plaintiff also was forced to sleep on an upper bunk which had air-conditioning vents 20 inches above its

occupant. Temperatures in the cell, especially while attempting to sleep on the bunk, dipped to at least 50 degrees nightly, and even with the provide dry, clean bedding, which consisted of a very thin sheet to cover the gymnasium mattress pad and a thin blanket not large enough to cover your whole body, Plaintiff was made to endure freezing temperatures for the entire 58 days.

## CAUSES OF ACTION

## COUNT ONE: VIOLATION OF CIVIL RIGHTS UNDER COLOR OF STATE LAW (42 U.S.C. §§ 1983, 1985[3])

20. The Plaintiff hereby realleges and incorporates each and every allegation set forth in paragraphs 1-19, as though set forth at length herein.

21. The wrongful conduct alleged herein is just one example of the implementation of a larger policy, pattern, and practice of the Defendants Maricopa County, Joseph M. Arpaio, and Maricopa County jail medical staff, under color of state law, depriving pre-trial, non-convicted detainees unfortunate enough to be forced to endure the conditions at said jails, of their inalienable and constitutional rights, by deliberately and maliciously disregarding the Constitution of Arizona, The U.S. Constitution, state and federal laws, integrity expectations, oaths, and blindly allowing it's sheriff to put citizens in harm's way while in their custody or under their control.

22. Further, said conduct evidences a related policy, pattern, and practice of committing, condoning, ratifying, approving, and otherwise serenely approving by condoning, overlooking with intentional indifference, and failing to prevent by prosecution or appropriate discipline, said malicious acts by jail personnel and Defendant Arpaio, which has caused intimidation, humiliation, degradation, physical and mental harm, and violations of constitutional rights.

23. Maricopa County, under color of law, makes policies which wantonly and maliciously violated the Plaintiff's and many others similarly situated, right to be free from cruel and unusual punishment.

24. The conditions at the Maricopa County Jail are degrading to human dignity, obviously inflicted in wholly arbitrary fashion, clearly and totally rejected throughout society (see Guantanamo Bay), and are patently unnecessary. *Furman vs. Georgia, 408 U.S. 238 (1972).*

25. Joseph M. Arpaio, who is responsible for the operation, administration, and policies of Maricopa County Jails, openly and wantonly brags in media and elsewhere about his policies of cruel and unusual punishment, without regard to the U.S. Constitution, the Constitution of Arizona, or any sort of consequences for his action.

26. It has since been ordered by this court (*Graves vs. Arpaio; D. Ariz No. CV-77-0479-PHX-NVW Oct. 2008*) that Maricopa County, which is responsible for the administration of jail medical facilities, *11 A.R.S. § 251(8) & 11 A.R.S. § 291(A) (2001 & Supp. 2008)*, "provide all pre-trial detainees…ready access to care to meet their serious medical [needs]" and that "[Arpaio] shall ensure that the pre-trial detainees' prescription medications are provided without interruption where medically prescribed…"

27. The National Commission of Correctional Healthcare terminated the accreditation of all Maricopa County Sheriff's Office jails, on September 25, 2008, for it's "failure to maintain compliance with national standards and providing false information about such compliance."

28. Plaintiff is informed and believes and thereupon alleges that, on and for some time prior to the events described herein, and continuing to the present day, Defendants Maricopa County and Joseph M. Arpaio, as supervising and managerial employees, agents, and representatives of Maricopa County and its jails, acting with deliberate indifference to the rights and liberties of pre-trial, non-convicted detainees in general and of Plaintiff and of persons within his class, situation and comparable position in particular, knowingly maintained, enforced, and applied policies, practices, and customs of:

   a. Employing and retaining jail officers and medical personnel, including but not limited to Defendant "Technician," who Defendants Maricopa County and Joseph M. Arpaio knew, or reasonably should have known, had dangerous and wanton propensities for abusing and/or neglecting their authority;

   b. Maintaining policies and practices of serving pre-trial, non-convicted detainees rotten, moldy, dirty "food"; forcing upwards of 60 people into small, confined holding cells for hours at a time; withholding and/or flat-out refusing vital medical treatments, including but not limited to prescription drugs for hypertension and splints for broken hands; exposing pre-trial, non-convicted inmates to medical experimentation procedures, including but not limited to giving them "water pills" for all maladies and exposing them to high level of radiation; and forcing pre-trial, non-convicted detainees to drink water from the same source as the toilets.

29. Defendants Arpaio and Maricopa County, as supervisory and administrative persons, were deliberately and maliciously indifferent to the rights of the Plaintiff, in violation of an absolute duty to prevent constitutional harm and instruct subordinates.

30. Plaintiff is informed and believes and thereon alleges, that Defendants Arpaio and Maricopa County, had actual knowledge of the unconstitutional policies and practices, wrongful conduct, and illegal activities of, but not limited to, Defendant "Technician," and said Defendants failed to properly instruct subordinates who enjoy inflicting harm on pre-trial, non-convicted detainees, and prevent constitutional harm to the Plaintiff.

31. As a result of the wrongful conduct, policies, and practices of defendants and each of them, the Plaintiff's civil rights, including but not limited to his rights guaranteed under the Eighth and Fourteenth Amendments of the United States Constitution, were repeatedly and wantonly violated, and Plaintiff sustained

damages and physical injuries, including but not limited to emotional and physical pain and suffering.

32. By this action, Plaintiff seeks all legal and equitable relief to which he is entitled, including but not limited to compensatory damages and punitive damages against Defendant "Technician" in her individual capacity as her actions, policies, and customs are clearly "motivated by evil motive or intent." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

33. As a proximate result of the acts of the defendants and each of them, Plaintiff was injured in his mental and physical health, suffers unknown and unpredictable long-term effects of radiation exposure, and was totally as the mercy of the policies, practices, and customs of Maricopa County which completely, deliberately, and wantonly disregarded the Plaintiff's constitutional right to be free from cruel and unusual punishment.

34. The acts of the Defendants, and each of them, as herein alleged were willful, wanton, malicious, and oppressive, and justify awarding of punitive damages against Defendant "Technician" in her individual capacity.

## COUNT 2: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

35. The Plaintiff hereby realleges and incorporates each and every allegation set forth in paragraphs 1-34, as though set forth at length herein.

36. Defendant Arpaio has continually, publicly bragged and boasted of his policies and practices of depriving pre-trial, non-convicted detainees of their constitutional rights. There is no question of the enjoyment and satisfaction Arpaio gets from his unconstitutional policies and practices, as the Defendant has never been shy about boasting about it.

37. The Plaintiff was forced, as a matter of human survival, to eat rotten, moldy "food," and drink water from a toilet mechanism for 58 days. The Plaintiff was also forced to eat food concoctions which he had no idea what was in them or where they had been.

38. Maricopa County, in its capacity as administrator of the medical services in their jails, intentionally and wantonly withheld vital blood pressure medications from the Plaintiff for 58 days, refused to give the Plaintiff a splint for his broken hand, and Defendant "Technician" forced the Plaintiff into a radiation exposure experiment. Defendant Arpaio encourages the environment in the jail system which allows guards to humiliate, degrade, and dehumanize pre-trial, non-convicted detainees, including but not limited to forcing the Plaintiff to strip down to boxer shorts and sit on hot concrete with insects and other vermin, forcing the Plaintiff to manipulate his genitalia in front of male and female guards, and forcing the Plaintiff to stand for hours in tiny holding cells with upwards of 60-70 other detainees, who were bleeding, coughing, and sick.

39. As a result of the wrongful conduct, policies, and practices of defendants and each of them, the Plaintiff was injured in many ways, including but not limited to emotional and physical pain and suffering, humiliation, degradation, and now has to live with the fact that he may have been sterilized for reproduction purposes from the radiation experiment and may suffer unpredictable cancers and other maladies from the radiation exposure.

40. By this action, Plaintiff seeks all legal and equitable relief to which he is entitled, including but not limited to compensatory damages and punitive damages against Defendant "Technician" in her individual capacity as her actions, policies, and customs are clearly "motivated by evil motive or intent" *(Id)*.

## PRAYER FOR RELIEF

I. Plaintiff prays for damages as follows:
   a. Declaratory judgment relief in the form of a judicial declaration stating the conduct of Defendants, and each of them, amounts to medical experimentation and/or gross negligence on pre-trial, non-convicted detainees, including, but not limited to, measuring human threshold levels when deprived of vital blood pressure medications and exposure to high levels of radiation, and measuring human tolerance of "food" substances

Complaint for Declaratory, Injunctive, and Other Relief - 10

fed to them daily. Said declaratory relief shall include a specific reprimand of Defendant "Technician" for her willful, wanton, and malicious practices of endangering the lives of pre-trial, non-convicted detainees with her medical experimentations.

b. Injunctive judgment relief enjoining Defendants to immediately cease and desist any and all medical experimentation practices and policies in their jails, whether it is declared gross negligence or otherwise.

c. Injunctive judgment relief enjoining Defendants to disclose, via written documentation, to each and every detainee in their jails upon booking, that any and all medical procedures are strictly voluntary and this right is inalienable. This same document shall include articles of the Eighth Amendment of the U.S. Constitution which state all detainees shall be free from any cruel and unusual punishment, which includes Defendants withholding vital medical treatments and medications.

d. Compensatory damages in the amount of $5.8 million, which breaks down to $100,000 per day the Plaintiff was subject to the continual cruel and unusual punishments administered by the Defendants.

e. Punitive damages against Defendant "Technician" in the amount of $1 million.

f. Any other damages the court deems necessary.

Respectfully submitted on this 29 day of June, 2009.

Brian A. Wilkins
Pro-Se Litigant
PO Box 66
Tempe, AZ 85280
480-529-0964
brianw@operation-nation.com