**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian A. Wilkins,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Maricopa County, et al.,<br><br>　　　　Defendants. | No. CV-09-1380-PHX-LOA<br><br>**ORDER** |

On June 29, 2009, Plaintiff filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. (docket # 1) On July 6, 2009, the Court granted Plaintiff *in forma pauperis* status. (docket # 5) Defendants Joseph M. Arpaio and Maricopa County were served and both filed Motions to Dismiss. (docket ## 14, 19) Rather than responding to the motions to dismiss, Plaintiff filed a Motion for Leave to Amend Complaint, docket # 28, which Defendants oppose. (dockets # 31, # 33) All served Defendants have consented in writing to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c). (docket ## 6, 17) As discussed below, the Court will grant Plaintiff leave to amend, will screen the claims alleged in the First Amended Complaint, and will deny the Motions to Dismiss, and related motions, as moot.

**I. Applicable Law**

Federal Rule of Civil Procedure 15 governs the amendment of pleadings. Rule 15 is applied liberally in favor of amendments and, in general, the district court should freely give leave when justice so requires. *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir.

1994). Leave need not be granted, however, where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. *Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981).

In addition to the standard governing amendment, because Plaintiff is proceeding *pro se*, 28 U.S.C. § 1915(e)(2) instructs that the district court "dismiss the case at any time if the court determines that . . . the action is frivolous or malicious[,] fails to state a claim on which relief may be granted[,] or seeks monetary relief against a defendant who is immune from such relief." *Id.* To streamline the application of Fed.R.Civ.P. 15 and § 1915(e), the Court will grant Plaintiff leave to amend and will review the First Amended Complaint under § 1915(e).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than unadorned, the-defendant-unlawfully harmed-me accusations." *Ashcroft v. Iqbal*, ___ U.S.___, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 1951.

## II. First Amended Complaint

In his four-count First Amended Complaint brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), Plaintiff sues the following Defendants: Maricopa County,

Maricopa County Sheriff Joseph M. Arpaio, an unidentified Maricopa County Jail X-ray Technician ("X-ray Technician"), and an unidentified Maricopa County Jail Guard ("Jail Guard") for violations of his Fourteenth and Eighth Amendment rights.

Plaintiff's allegations arise from a 58-day period in 2008 during which he was a pretrial detainee at the Lower Buckeye Jail in Phoenix, Arizona. (docket # 29 at 3) Plaintiff alleges that on July 22, 2008, he was arrested by the Tempe Police Department and taken to the Fourth Avenue Jail in Phoenix, Arizona. (*Id.*) Plaintiff alleges that "Maricopa County" collected information about his medical history; including that he takes medication for hypertension, and that he had been treated two weeks prior for a broken hand. (*Id.*) On July 23, 2008, Plaintiff was transferred to Lower Buckeye Jail. On July 25, 2008, at around 10:30 a.m., Plaintiff was "forcibly given an X-ray against his will, on his broken hand." (*Id.*) The Defendant X-Ray technician did not provide Plaintiff a "lead apron or [other] garment to guard against radiation poisoning and/or overexposure." (*Id.*)

Plaintiff further alleges that Maricopa County has a policy and custom of forcing pretrial detainees to participate in unsafe, involuntary medical experiments, and that "Maricopa County doctors" "continually tried to force Plaintiff to allow them to stick needles in him" to "figure out why [Plaintiff has] high blood pressure." (docket # 29 at 4) Plaintiff claims he was threatened with solitary confinement if he continued to refuse to let "Maricopa County doctors" stick needles in him, and that the doctors eventually "gave up." (*Id.*) Plaintiff alleges that "jail officials" refused to provide him with his hypertension medication, despite his repeated requests. (docket # 29 at 4-5) Plaintiff further claims that "Maricopa County medical" refused to give him a splint for his broken hand. (docket # 29 at 4)

Plaintiff also claims that during his 58 days of confinement, he was given rotten meat and fruit, moldy bread, and polluted water pursuant to policies of Defendants Maricopa County and Arpaio. (docket # 29 at 5) Plaintiff further alleges that, pursuant to the policies of Defendants Maricopa County and Arpaio, he was forced to "stand in small holding cells with upwards of 60 sick, coughing, bleeding inmates who could not move because of the crowding."

(*Id.*) Finally, Plaintiff alleges that Defendant Jail Guard forced Plaintiff to strip naked in front of other guards and "placed his hands on Plaintiff's genitals." (*Id.*)

### A. Eighth Amendment Claims

In Counts One and Four, Plaintiff asserts violations of the Eighth Amendment. (docket # 29 at 8, 12) Because Plaintiff's allegations stem from a period during which he was a pretrial detainee and had not been convicted and sentenced, Plaintiff lacks standing to bring claims under the Eighth Amendment. The protections of the Eighth Amendment do not attach until after conviction and sentence. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239 (1983) ("Eighth Amendment scrutiny is appropriate only after the state has secured a formal adjudication of guilt."); *Ingraham v. Wright*, 430 U.S. 651, 671, n. 40 (1977) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."). The relevant constitutional provision to adjudicate claims based on the violation of the rights of pretrial detainees is the Due Process Clause of the Fourteenth Amendment. *Ingraham*, 430 U.S. 651, 671-672, n. 40 (1977) ("Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment."). Accordingly, Plaintiff's claims under the Eighth Amendment will be dismissed with prejudice for lack of standing.

### B. Count One

In Count One of the First Amended Complaint, Plaintiff alleges violations under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).

#### 1. Allegations under Section 1985(3)

"To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1989) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).

- 4 -

"The language requiring intent to deprive of equal protection . . . means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102. The Ninth Circuit has extended § 1985(3) "beyond race 'only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (internal citations omitted). Specifically, the Ninth Circuit requires "'either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection.'" *Sever*, 978 F.2d at 1536 (quoting *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985)). A claim under Section 1985(3) "must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 626 (9th Cir. 1988).

Plaintiff's First Amended Complaint fails to state a claim under 42 U.S.C. § 1985(3). Plaintiff alleges that Maricopa County made policies, which Defendant Arpaio administered, that "violated the Plaintiff's and many others similarly situated rights to be free from cruel and unusual punishment and substantive due process." (docket # 29 at 6-7) Plaintiff does not allege any of the elements necessary to state a claim under 42 U.S.C. § 1985(3). For example, the second element requires a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Gillespie,* 629 F.2d at 641. Plaintiff does not make any allegation that he was subjected to discrimination on the basis of his race or other membership in a class. The Court will dismiss Plaintiff's allegations under 42 U.S.C. § 1985(3) for failure to state a claim.

**2. Other Allegations in Count One**

In Count One Plaintiff alleges that, pursuant to the policies of Defendants Maricopa County and Arpaio, detainees were placed in crowded holding cells, served rotten food and polluted water, denied medical treatment, and were used for medical experiments. Plaintiff alleges that as "a result of the wrongful conduct, policies, and practices of defendants

and each of them, the Plaintiff's civil rights, including but not limited to his rights under the Eighth and Fourteenth Amendments of the United States Constitution, were repeatedly and wantonly violated, and Plaintiff sustained damages and physical injuries, including but not limited to emotional and physical pain and suffering." (docket # 29 at 8)

As previously stated, Plaintiff's claims under the Eighth Amendment will be dismissed for lack of standing. The Court will consider Plaintiff's allegations, which can be divided into conditions of confinement and medical claims, under the Fourteenth Amendment's Due Process Clause. The Fourteenth Amendment's Due Process Clause protects a pretrial detainee from punishment prior to an adjudication of guilt in accordance with due process of law. *Bell v. Wolfish*, 441 U.S. 520, 534-35 (1979). "This standard differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment." *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008). A pretrial detainee's due process rights are at least as great as a convicted prisoner's Eighth Amendment rights. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003) ("[E]ven though the pretrial detainees' rights arise under the Due Process Clause, the guarantees of the Eighth Amendment provide a minimum standard of care for determining their rights. . . .").

### a. Conditions of Confinement

The "more protective" Fourteenth Amendment standard applies to conditions of confinement for pretrial detainees and requires the government to do more than provide minimal necessities. *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004). To prevail on a Fourteenth Amendment claim regarding conditions of confinement, a pretrial detainee generally need not satisfy the Eighth Amendment's "deliberate indifference" standard of culpability. *Jones*, 393 F.3d at 933-34. Rather, the Fourteenth Amendment's "punishment" standard applies to pretrial detainees' claims. *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008).

"[T]he fact that [pre-trial] detention interferes with the detainee's understandable desire to live as comfortably as possible and with as a little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Bell*, 441 U.S. at 537. Although pretrial detainee's claims arise under the Fourteenth Amendment's Due Process Clause, the Eighth Amendment's guarantees provide a minimum standard of care for determining a pretrial detainee's rights. *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). The Eighth Amendment requires that prison officials provide inmates with adequate food, clothing, shelter, sanitation, and medical care and take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Plaintiff claims that, pursuant to the polices and practices of Defendants Maricopa County and Joseph Arpaio, he was "given moldy bread, spoiled, smelly meat substances, and rotten fruits for a 'breakfast meal,' and some sort of concoction which can only be described as vomit looking, for a "dinner meal, per the policy of Maricopa County Sheriff Joseph M. Arpaio." (docket # 29, ¶ 15, ¶ 27) Plaintiff further argues that he bought food from the canteen which was "stolen and damaged by jail guards on one occasion." (docket # 29, ¶ 16, ¶ 27) He further claims that he was "forced several times to stand in small holding cells with upwards of 60 sick, coughing, bleeding inmates who could not move because of crowding." (docket # 29, ¶ 16, ¶ 27) Plaintiff alleges that "the water supplied to [him] at 'Lower Buckeye Jail' comes from a toilet and looks very cloudy and polluted." (docket # 29, ¶ 17, ¶ 27b) Plaintiff claims that as a result of the acts of Defendants, he "was injured in his mental and physical health, suffers unknown and unpredictable long-term effects of radiation exposure . . . ." (docket # 29 ¶ 32)

**b. Overcrowding**

Although a pretrial detainee's claims arise under the Fourteenth Amendment's Due Process Clause, the Eighth Amendment's guarantees provide a minimum standard of care for determining a pretrial detainee's rights. *Jones*, 781 F.2d at 771. The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of the inmates. *Farmer*, 511 U.S. at 832. "Prison officials have a duty to take reasonable steps to protect

inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982) (*Hoptowit I*). Overcrowding can violate the Eighth Amendment if it results in specific effects that form the basis for an Eighth Amendment violation such as by causing increased violence, diluting constitutionally required services to the extent they fall below the minimum Eighth Amendment standards, or by reaching a level "unfit for human habitation." *Hoptowit I*, 682 F.2d at 1249. Overcrowding does not give rise to an Eighth Amendment violation without evidence that it has, in fact, increased violence, deprived pretrial detainees of constitutionally required services, or violated contemporary standards of decency. *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981).

In his Amended Complaint, Plaintiff alleges that, pursuant to the policies of Defendants Maricopa County and Arpaio, he was "forced several times to stand in small holding cells with upwards of 60 sick, coughing, bleeding inmates who could not move because of crowding." (docket # 29, ¶ 16) Plaintiff's allegations of overcrowding are sufficient to state a claim against Defendant Arpaio and Defendant Maricopa County.

### c. Food and Water

Although a pretrial detainee's claims arise under the Fourteenth Amendment's Due Process Clause, the Eighth Amendment's guarantees provide a minimum standard of care for determining a pretrial detainee's rights. *Jones*, 781 F.2d at 771. The Eighth Amendment requires that prison officials provide inmates with adequate food. *Farmer*, 511 U.S. at 832. Food provided to inmates must not only be "nutritionally adequate," but also "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559, 570-71 (10th Cir. 1980). However, "[t]he Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing. The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993).

Plaintiff alleges that, pursuant to the policies of Defendant Arpaio and Maricopa County, he was "given moldy bread, spoiled, smelly meat substances, and rotten fruits

- 8 -

for a 'breakfast meal,' and some sort of concoction which can only be described as vomit looking, for a "dinner meal, per the policy of Maricopa County Sheriff Joseph M. Arpaio." (docket # 29, ¶ 15) Plaintiff also alleges that "the water supplied to [him] at 'Lower Buckeye Jail' comes from a toilet and looks very cloudy and polluted." (docket # 29, ¶ 17, ¶ 27b) Plaintiff's allegations that he was given rotten food and polluted water state a claim against Defendants Arpaio and Maricopa County and an answer will be required.

### d. Medical Care

In Count One, Plaintiff asserts that Defendants Maricopa County and Arpaio maintained policies and practices of "withholding and/or flat-out refusing vital medical treatments, including but not limited to prescription drugs for hypertension and splints for broken hands; exposing pre-trial non-convicted inmates to medical experimentation procedures, including but not limited to giving them 'water pills' for all maladies and exposing them to high level of radiation." (docket # 29, ¶ 27(b)) To the extent the foregoing allegations assert the rights of other detainees, Plaintiff lacks standing to assert those claims. A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 610 (9th Cir. 2005) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Accordingly, Plaintiff's claims asserting the rights of persons other than himself will be dismissed.

In Count One, Plaintiff further alleges that, pursuant to the policies of Defendants Maricopa County and Arpaio, "Maricopa County medical" refused to give him a splint for his broken hand and that "jail officials" refused Plaintiff's repeated requests for his medication for hypertension. (docket # 29, ¶ 13, ¶ 14) Plaintiff contends that during the 58 days he was detained his blood pressure exceeded 155/110, a "fatal level." (docket # 29, ¶ 13) Plaintiff also alleges that the failure to provide a splint for his broken hand caused him "severe pain" and "caused his hand to heal improperly and has caused arthritis-like symptoms in said hand." (docket # 29, ¶ 14) Although a pretrial detainee's claims arise under the Fourteenth Amendment's Due Process Clause, the Eighth Amendment's guarantees provide a minimum standard of care for determining a pretrial detainee's rights. *Jones*, 781 F.2d at 771. The Eighth

Amendment requires that prison officials provide inmates with adequate medical care. *Farmer*, 511 U.S. at 832; *Estelle v. Gamble*, 429 U.S. 97 (1976). To violate the Eighth Amendment, defendants must act with deliberate indifference to the prisoner's serious medical needs. *Estelle*, 429 U.S. at 104. Section 1983 relief does not lie for medical malpractice. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000); *see also Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Even gross negligence related to medical treatment is not sufficient to establish deliberate indifference to serious medical needs. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Liberally construing the Amended Complaint, Plaintiff's allegations that he was denied blood pressure medication despite repeated requests, and that he was denied a splint for his broken hand state a claim and an answer will be required.

### B. Count Two - Procedural Due Process

In Count Two, Plaintiff alleges a violation of the Fourteenth Amendment's Due Process clause based on Defendant Arpaio's failure to provide Plaintiff with a copy of the "MCSO Rules and Regulations," a pamphlet which includes information regarding administrative remedies for grievances. (docket # 29, ¶ 9) Plaintiff claims that he had to obtain a copy of the pamphlet from another inmate and alleges that "Defendants wantonly violated procedural due process" by not providing him with the pamphlet. Plaintiff asserts that he exhausted available administrative remedies. (docket # 29 ¶ 11) Plaintiff's assertions in Count Two appear to be in response to the arguments raised by Maricopa County and Joseph Arpaio in their Motions to Dismiss directed to the original Complaint. Defendants Maricopa County and Arpaio moved for dismissal based, in part, on Plaintiff's failure to exhaust administrative remedies. They argued that Plaintiff's claims should be dismissed for failure to comply with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which requires a prisoner to exhaust administrative remedies before filing suit. However, the Ninth Circuit Court of

Appeals in *Talamentes v. Leyva*, ___ F.3d ___, 2009 WL 2392913 (9th Cir., August 6, 2009), recently held that the exhaustion requirement is applicable only to those individuals who are incarcerated at the time they file the lawsuit. Plaintiff was not incarcerated when he filed suit and, thus, the exhaustion requirement did not apply to him. *Id.* Accordingly, Plaintiff's allegations in Count Two do not state a claim for relief under § 1983.

### C. Count Three - Fourteenth Amendment

In Count Three, Plaintiff asserts a violation of his Fourteenth Amendment Due Process rights based on the quality of medical care he received. Plaintiff alleges that Defendant X-Ray technician "violated Plaintiff's Fourteenth Amendment Due Process rights when she forced the Plaintiff against his will to undergo unnecessary medical treatments, as a punishment for the Plaintiff refusing the treatment." (docket # 29, ¶ 42) Plaintiff further alleges that Defendants Arpaio and Maricopa County promoted an environment which allowed medical personnel to force Plaintiff into unsafe medical treatments which he refused. (docket # 29, ¶ 43) Plaintiff alleges the following facts in support of Count Three. On July 22, 2008, Plaintiff was arrested by the Tempe Police Department and was taken to the Maricopa County Jail. (docket # 29, ¶ 7) Plaintiff was detained as a pretrial detainee until September 17, 2008, a total of 58 days. (docket # 29, ¶ 7) On July 23, 2008, Plaintiff was transferred to the Lower Buckeye Jail. Plaintiff contends he was "forcibly given an X-ray against his will, on his broken hand." (docket # 29, ¶¶ 9 -11) Plaintiff claims the X-ray was unnecessary because he was already wearing a splint and X-rays had been taken at Banner Medical Center in Mesa, Arizona and at Arizona State University in early July. Plaintiff argues that Defendant Maricopa County had access to these records but "wantonly, intentionally, and maliciously exposed the Plaintiff to high levels of radiation without any sort of protection." (docket # 29, ¶ 9)

Plaintiff claims that Defendant X-ray Technician placed Plaintiff "under a large x-ray machine" without any protection, such as a "lead apron or garment." (docket # 29, ¶¶10-11) Plaintiff claims that he refused the x-ray, but the Technician proceeded with the x-ray anyway. (*Id.*) Plaintiff does not allege any specific injury as a result of the x-ray other than

stating that "only a medical expert would be able to evaluate the damage and potential damage done to Plaintiff because of the exposure." (*Id*. at 4)

Plaintiff was a pretrial detainee at the time of the events alleged in his First Amended Complaint. "[P]retrial detainees . . . possess greater constitutional rights than prisoners." *Stone v. City of San Francisco*, 968 F.2d 850, 857 n. 10 (9th Cir. 1992). A pre-trial detainee's right to be free from punishment is grounded in the Fourteenth Amendment's Due Process clause, but courts borrow from the Eighth Amendment's jurisprudence when analyzing the rights of pretrial detainees. *Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002). To violate the Eighth Amendment, defendants must act with deliberate indifference to the prisoner's serious medical needs. *Estelle*, 429 U.S. at 104. Section 1983 relief does not lie for medical malpractice. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000); *see also Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Even gross negligence related to medical treatment is not sufficient to establish deliberate indifference to serious medical needs. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

The unidentified Defendant X-ray Technician's conduct does not give rise to a constitutional violation. Plaintiff's allegation that the X-Ray Technician failed to provide Plaintiff with a "lead apron" or other protective garment amount to nothing more than negligence, i.e., standard of care questions involving reasonableness under similar circumstances. *Estelle*, 429 U.S. at 106. Additionally, to state a claim under § 1983, a plaintiff must allege that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). Plaintiff does not allege any specific injury as a result of the x-ray. He speculates that "only a medical expert would be able to evaluate the damage and potential damage done to Plaintiff because of the exposure." (*Id*. at 4) The Court will dismiss Count Three against X-ray Technician with prejudice.

**D. Count Four - Eighth and Fourteenth Amendment Claims**

In Count Four, Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights based on a "sexual assault" by an unidentified Jail Guard. (docket # 29 at 12) As previously stated, Plaintiff's claims under the Eighth Amendment will be dismissed for lack of standing. However, the Court will consider Plaintiff's allegations under the Fourteenth Amendment. Plaintiff alleges that on August 19 or 20, 2008, Defendant Jail Guard, a male, told Plaintiff that "black inmates" were suspected of having marijuana in their cells. Although Plaintiff told Defendant Jail Guard that he did not have marijuana in his cell, "Defendant commenced to grab the Plaintiff's genitals and fondle them for several seconds, saying he was 'searching for contraband,' while the Plaintiff's cellmate stood right there." (docket # 29, ¶¶ 18, 47) Plaintiff further alleges that "Defendant then spread the Plaintiff's buttocks, then told the Plaintiff to put his boxers back on and head downstairs." (*Id*.) Plaintiff contends that the assault was in retaliation for Plaintiff having filed a grievance about guards destroying his mail. (*Id*.) Plaintiff claims that the "trauma, emotional distress, and sheer embarrassment as a result of this incident caused the Plaintiff to avoid contact with all Maricopa County jail employees for the remainder of time he was incarcerated as a pre-trial [detainee], and caused Plaintiff to not speak of said incident, except for (sic) to a couple of close family [members] and friends." (docket # 29, ¶ 48) Plaintiff's allegations state a claim under the Fourteenth Amendment and will be permitted to proceed.

Plaintiff was a pretrial detainee at the relevant times. Because he was not a convicted prisoner at those times, his claims do not arise under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979) (the Eighth Amendment prevents the imposition of cruel and unusual punishment on convicted prisoners); *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) (the Eighth Amendment applies only to convicted prisoners). When a person has been arrested but has not been convicted of a crime, "his rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment." *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002). It is the more

- 13 -

protective Fourteenth Amendment that sets the standards applicable to a pretrial detainee's conditions of confinement. *Gary H. v. Hegstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987) (citing *Youngberg v. Romeo,* 457 U.S. 307 (1982), and *Bell*, 441 U.S. 520).

The Fourteenth Amendment "requires the government to do more than provide the 'minimal civilized measure of life's necessities' for non-convicted detainees." *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004). At a minimum, "the Fourteenth Amendment prohibits all punishment of pretrial detainees." *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004). *Bell*, 441 U.S. at 535 (when the state detains a person on a criminal charge, that person, unlike one convicted of a crime, "may not be punished prior to an adjudication of guilt in accordance with due process of law").

The prohibition against punishment of pretrial detainees extends to actions that "amount to punishment." *Id.* at 536. A particular action will not amount to prohibited punishment unless it causes the detainee to suffer some harm or disability. *Id.* at 538. Harm suffered by a pretrial detainee may constitute unconstitutional punishment even if the harm itself is not independently cognizable as a separate constitutional violation. *Demery*, 378 F.3d at 1030. However, "the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Id*. Loss of freedom of choice and diminished privacy are examples of inherent incidents of confinement. *Bell*, 441 U.S. at 537.

A pretrial detainee may demonstrate that an action was unconstitutionally punitive by showing that the action was expressly intended to punish or that the action served an alternative, non-punitive purpose but was "'excessive in relation to the alternative purpose.'" *Demery*, 378 F.3d at 1028 (quoting *Bell*, 441 U.S. at 538). A challenged action that is reasonably related to a legitimate government goal, such as effective management of the jail or maintenance of internal jail security and order, will not, without more, constitute punishment. *Bell*, 441 U.S. at 539-40, 546; *Redman v. County of San Diego*, 942 F.2d 1435, 1440-41 (9th Cir. 1991); *White v. Roper*, 901 F.2d 1501, 1504 (9th Cir. 1990). "Conversely, a court may infer an intent to punish when there is no such reasonable relation." *White*, 901 F.2d at 1504 (citing *Bell*,

441 U.S. at 540). " 'Retribution and deterrence are not legitimate nonpunitive governmental objectives.' " *Id.* at 1504-05 (quoting *Bell*, 441 U.S. at 539 n. 20).

Although the Fourteenth Amendment protects pretrial detainees from the use of force that amounts to punishment, it is "the Fourth Amendment [that] sets the 'applicable constitutional limitations' for considering claims of excessive force during pretrial detention." *Gibson*, 290 F.3d at 1197 (quoting *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir.1996)). The Fourth Amendment standard is one of "objective reasonableness." *Lolli v. County of Orange*, 351 F.3d 410, 415 (9th Cir. 2003) (citing *Pierce*, 76 F.3d at 1043). "The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

The allegations in Count Four that Defendant Jail Guard, in the presence of Plaintiff's cell mate, strip-searched Plaintiff, "grab[bed] Plaintiff's genitals and fondle[d] them for several seconds, . . . spread the Plaintiff's buttocks" (docket # 29, ¶ 18, ¶ 47) state a claim under the Fourteenth Amendment. *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988) (Strip-searches that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest," however, *may* be unconstitutional); *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) ("[T]he core judicial inquiry is . . . .whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.").

The only named Defendant in Count Four is a "Doe defendant," identified as Jail Guard. Although the use of a Doe defendant is sufficient to withstand dismissal at the initial review stage, using a Doe defendant creates problems because such an individual cannot be served with process until he or she is identified by a real name. Because the identity of defendant Jail Guard is unknown, the Court cannot order service on that person. The Court will give Plaintiff an opportunity to discover the Jail Guard's true name and address. Plaintiff must promptly take steps to discover the full name and address of the unknown Defendant Jail Guard and provide that information to the Court in a supplement to his pleading.

In view of the foregoing,

**IT IS ORDERED** that Plaintiff's Motion for Leave to Amend Complaint (docket # 28) is **GRANTED**. The Clerk of Court shall file the proposed First Amended Complaint. (docket # 29)

**IT IS FURTHER ORDERED** that Counts Two and Three of the First Amended Complaint are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Eighth Amendment claims are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's allegations asserting the rights of detainees other than himself are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Defendants Arpaio and Maricopa County shall answer Plaintiff's allegations in Count One of the First Amended Complaint that inadequate medical care and inadequate conditions of confinement violated Plaintiff's Fourteenth Amendment rights.

**IT IS FURTHER ORDERED** that Plaintiff may engage in discovery to determine the identify of the unknown Defendant Jail Guard and that on or before **February 15, 2010**, Plaintiff shall provide the full name and address of the unknown Jail Guard identified in Count Four to the USMS for service. If Plaintiff fails to provide a full name and address for the unknown Jail Guard by February 20, 2010, his claims against unknown Jail Guard may be dismissed without prejudice.

**IT IS FURTHER ORDERED** that the following motions are **DENIED** as moot: Maricopa County's Motion to Dismiss, docket # 14; Defendant Arpaio's Motion to Dismiss, docket # 19; the motions of Defendant Arpaio and Maricopa County for Summary Disposition, dockets # 33, # 35; and Plaintiff's Motion to Strike Defendants' Request for Summary Disposition, docket # 38.

DATED this 21st day of December, 2009.

*/s/ Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge