**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian A. Wilkins, | No. CV-09-1380-PHX-LOA |
| Plaintiff, | **ORDER** |
| vs. | |
| Maricopa County, et al., | |
| Defendants. | |

This matter is before the Court on the Motion of Maricopa County (the "County") for Summary Judgment, doc. 156. Plaintiff has filed a response, doc. 164, to which Maricopa County has replied, doc. 165. All parties have consented in writing to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 6, 17) After consideration of this matter, the Court will grant Maricopa County's Motion for Summary Judgment.

**I. Background**

On July 22, 2008, Plaintiff was arrested by Tempe Police and taken to Central Intake at the Maricopa County Jail. On July 23, 2008, Plaintiff was transferred to the Lower Buckeye Jail, where he was incarcerated for a total of 58 days during July, August, and September of 2008. (Doc. 91 at 2-3; DSOF ¶ 1)[1] Plaintiff alleges that, while confined, Correctional Health Services provided him inadequate medical care. (DSOF ¶ 2) Plaintiff

---

[1] Citations to (DSOF ¶ __) are to Defendant Maricopa County's Statement of Facts in Support of Motion for Summary Judgment, doc. 157.

specifically argues that he was not given the proper anti-hypertensive medication, and that he was not given a splint for a broken hand that he had sustained two weeks before he was incarcerated. (Doc. 91 at 3-4; DSOF ¶ 4) Plaintiff contends that the poor quality of medical care he received amounted to "deliberate indifference" to his serious medical needs. (Doc. 91; DSOF ¶ 5) Plaintiff further alleges that the County failed to properly train Correctional Health Services' staff regarding obtaining medical records from outside providers. (Doc. 91 at 9-10; DSOF ¶ 6)

## II. Summary Judgment Standard

A district court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Jesinger*, 24 F.3d. at 1130. In addition, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). *Brinson v. Lind Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-

50. However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

Whatever facts which may establish a genuine issue of fact must *both* be in the district court's file and set forth in the response. *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001). The trial court

> may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers. Though the court has discretion in appropriate circumstances to consider other materials, it need not do so. The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.

*Id.* at 1031.

**III. Deliberate Indifference to a Serious Medical Need**

The events about which Plaintiff complains took place when he was a pretrial detainee. Although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees, *Bell v. Wolfish*, 441 U.S. 520, 537 n. 16 (1979), the same standards apply in both cases. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010) (rejecting the contention that mentally ill pretrial detainees are entitled to greater protection under the Fourteenth Amendment). "[The Ninth Circuit has] long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs . . . under a 'deliberate indifference' standard." *Id.* at 1241. A prison official cannot be liable for deliberate indifference unless he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical

needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In the Ninth Circuit, the test for deliberate indifference consists of two parts. *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1991), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* at 1059 (citing *Estelle*, 429 U.S. at 104). Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. *Id.* at 1060. This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference. *Id.* Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* at 1059 (quoting *Hutchinson v. United* States, 838 F.2d 390, 392 (9th Cir. 1988)). Yet, an "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983. *Id.* (citing *Estelle*, 429 U.S. at 105). A prisoner need not show his harm was substantial; however, such a showing would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. *Id.* at 1060. If the harm is an "isolated exception" to the defendant's "overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference." *Id.* (citations omitted).

A detention official's knowledge of substantial risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that the prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (citations omitted); *see also Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) (finding that summary judgment on a detainee's medical indifference claim was improperly granted because "the officers' indifference to Lolli's extreme behavior, his obviously sickly appearance and his explicit statements that he needed food because he was a diabetic could easily lead a jury to find that the officers consciously disregarded a serious risk to Lolli's health."). "*Farmer's*

- 4 -

obviousness requirement does not necessitate a showing that an individual prison official had specific knowledge that harsh treatment of a particular inmate, in particular circumstances, would have a certain outcome." *Thomas v. Ponder*, 611 F.3d 1144, 1151 (9th Cir. 2010). Instead, obviousness is measured "in light of reason and the basic general knowledge that a prison official may be presumed to have obtained regarding the type of deprivation involved." *Id.* (citing *Farmer*, 511 U.S. at 842). The obviousness of a risk is not conclusive, however, and a defendant "may show that the obvious escaped him." *Farmer*, 511 U.S. at 843 n. 8. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

Here, Plaintiff first argues that the County was deliberately indifferent to his serious medical needs because it refused to give Plaintiff the blood pressure medication he had been taking for the five years prior to his incarceration. (Doc. 91) Plaintiff claims that his "blood pressure exceeded 155/110 throughout most of the 58 days, a fatal level." (Doc. 91 at 4) The County does not dispute that Plaintiff's blood pressure was a serious medical need. Rather, it argues that Plaintiff was given appropriate care. In support of its summary judgment motion, the County offers the affidavit of Tricia Colpitts, a board certified nurse practitioner "who holds a doctor of nursing practice."[2] She has been employed by Maricopa County's Correctional Health Services since 1995. (Doc. 57; Exh. C) Tricia Colpitts avers that the medical care and treatment Plaintiff received was reasonable, appropriate, and met the applicable standard of care. (DSOF ¶ 23) When Plaintiff was booked into jail, testing of

---

[2] Defendant refers to Tricia Colpitts as "Dr. Tricia Colpitts." (Doc. 156 at 6) Tricia Colpitts signed her affidavit as "Tricia Colpitts," without any additional insignia indicating her status as a medical professional. (Doc. 157; Exh. C) She refers to herself as a nurse practitioner who "holds a doctor of nursing practice." (*Id.*) The Doctor of Nursing Practice ("DNP") is an advanced-level practice degree that focuses on the clinical aspects of nursing. The curriculum for the DNP degree generally includes advanced practice, leadership, and application of clinical research. The DNP prepares registered nurses to become advanced practice nurses. www.acch.nech.edu. In view of the foregoing, the Court will not refer to Tricia Colpitts as a doctor, a term which generally suggests a medical doctor.

- 5 -

his blood pressure revealed elevated blood pressure for which medication was appropriate. (DSOF ¶ 7, Exhs. C, I)  Upon learning that Plaintiff was taking medication for hypertension, Correctional Health personnel obtained a signed medical release from Plaintiff and tried to verify his prescription for hypertension medication from Walgreens, where Plaintiff reported filling his prescriptions.  (DSOF ¶ 8; Exhs. C, I)  Plaintiff concedes that he signed the Correctional Health Services' authorizations.  (DSOF ¶ 53; Exh. at J)  Walgreens did not have any current prescriptions for Plaintiff.   (Exh. E)  During his deposition, Plaintiff admitted that he had not had his anti-hypertensive medication filled at Walgreens since January, 2008, approximately six months before he was detained in the Maricopa County Jail. (DSOF ¶ 55; Doc. 157-1 at 76)  Plaintiff explains that he had not had his prescription for Benicar filled at Walgreens since January 2008 because he obtained a six-month supply of his medication from the manufacturer. (*Id*.)  Despite the lack of a current prescription at Walgreens, in view of Plaintiff's high blood pressure, Correctional Health Services' personnel ordered Hydrochlorothiazide to treat Plaintiff's hypertension while he was incarcerated.  (DSOF ¶ 11)  Plaintiff states that, although he received the medication, he did not take it.  (DSOF ¶ 49; Doc. 157-1 at 75-76)  Plaintiff claims that he took Benicar for his hypertension because Hydrochlorothiazide was not effective for him.  (Doc. 164 at 3)

        Hydrochlorothiazide is an effective and appropriate treatment for hypertension. (DSOF ¶ 12; Exh. C)  Plaintiff argues that his doctor, Dr. Lon Brewer, initially prescribed Hydrochlorothiazide for him because "it is one of the cheapest medications for hypertension."  (Doc. 164 at 2)   However, because Hydrochlorothiazide was ineffective in lowering Plaintiff's blood pressure, his doctor prescribed Benicar. (*Id*.)   Plaintiff argues that because Defendant knew Plaintiff had taken Benicar in the past, giving Plaintiff Hydrochlorothiazide amounted to deliberate indifference.  Even if Benicar was a better

/ / /
/ / /
/ / /

choice for Plaintiff, the record reflects that Plaintiff's blood pressure, which Defendant monitored regularly, was being reasonably controlled with Hydrochlorothiazide.  (DSOF ¶ 14, Exh. I[3])

The record does not support Plaintiff's assertion that his blood pressure "exceeded155/110 throughout most of the 58 days" he was incarcerated.  (Doc. 91 at 4) Here, there is no genuine issue of material fact regarding whether the hypertension medication chosen by Defendant was medically unacceptable. *Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004) (rejecting claim that defendant acted with deliberate indifference because by prescribing inferior medication.).  A mere "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).   In other words, where a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, a plaintiff has failed to show deliberate indifference as a matter of law. *Estelle*, 429 U.S. at 107-08.  Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health."  *Id.* (citation omitted); *Marcotte v. Monroe Corrections Complex*, 394 F.Supp.2d 1289 (W.D.Wash. 2005) (inmate's disagreement with the reasonableness of a health care provider's diagnosis and treatment is not sufficient to show deliberate indifference.).   Likewise, summary judgment is appropriate because Plaintiff has not raised a triable issue that Defendant intentionally gave him the wrong medication. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

---

[3] Records of Plaintiff's blood pressure include the following readings:  July 22, 2008 - 150/84 (doc. 157-1 at 51); July 25, 2008 - 141-92; July 26, 2008 - 138/94; July 27, 2008 - 140/97; July 28, 2008 - 129/83; July 30, 2008 - 149/86 (doc. 157-1 at 56); August 2, 2008 - 140/100; August 3, 2008 - 144/97; August 4, 2008 - 132/89; August 5, 2008 - 119/76; August 6, 2008 - 122/79; August 7, 2008 - 140/89; August 9, 2008 - 130/90; August 10, 2008 - 138/86 (doc. 157-1 at 55); August 12, 2008 - 139/89; and September 12, 2008 - 144/96. (Doc.157-1 at 50).

2006) (explaining that deliberate indifference involves a purposeful act). Rather, Correctional Health Services gave Plaintiff medication which was appropriate for his hypertension and reasonably controlled it. (DSOF ¶ 13; Exh. C) Based on the foregoing, the Court finds that there is no genuine dispute as to any material fact and that the County is entitled to summary judgment as a matter of law on this claim. Fed.R.Civ.P. 56(a).

Plaintiff also argues that Correctional Health Services acted with deliberate indifference to his fractured hand. Plaintiff contends that "Maricopa County medical staff. . . refused [him] a splint for his broken hand, causing the Plaintiff severe pain without any protection to the broken bone in his hand, and caused his hand to heal improperly and caused arthritis-like symptoms in said hand." (Doc. 91 at 4) The record reflects that, the same day Plaintiff was booked into jail, Correctional Health Services' personnel obtained a medical release from Plaintiff to obtain copies of his medical records from Banner Desert Hospital where Plaintiff reported having received treatment for a hand fracture sustained on June 28, 2008. (DSOF ¶ 16; Exh. I) Correctional Health Services also obtained its own x-ray of Plaintiff's hand. (DSOF ¶ 17; Exh. C) Defendant contends that Plaintiff was not wearing a splint on his hand when he was booked into jail, told Correctional Health Services' personnel he had stopped wearing a splint at home, and reported that he had only minimal pain in his hand. Based on the foregoing information, Correctional Health Services' personnel provided Plaintiff with an ACE wrap pending results of the x-ray. (DSOF ¶ 18; Exh. C)

Plaintiff, on the other hand, testified at his deposition that he was wearing a "velcro splint" when he was booked into jail, but "they took it." (Exh. J, Doc. 157-1 at 74) Plaintiff further testified that he stopped using the splint the doctor had given him after two weeks, and had started wearing a "velcro removable splint." (Doc. 157-1 at 74) Plaintiff explained that he had ordered the velcro splint online, and that it had neither been prescribed nor approved by a doctor. (*Id*.) The x-ray obtained by Correctional Health Services revealed a slightly impacted fracture of the distal shaft of the right fifth metacarpal with dorsal ulnar angulation. (DSOF ¶ 19; Exh. C) Defendants have offered the affidavit of nurse practitioner

Colpitts who avows that, based on the results of the x-ray, it was not necessary for Plaintiff to have a splint for his hand while he was incarcerated. (DSOF ¶ 20, 44; Exh. C)  Defendant further states that on August 1, 2008, Plaintiff reported that he was not experiencing any pain in his hand, and demonstrated a full range of motion. (DSOF ¶ 21)  Colpitts avers that a splint would have reduced Plaintiff's range of motion, which was not desired. (DSOF ¶ 22)  Although Correctional Health Services gave Plaintiff an ACE bandage for his hand, Plaintiff contends that jail guards took it from him a few days later when he went to court. (Doc. 157-1 at 75)  Plaintiff concedes that he never asked jail personnel for the ACE bandage to be returned to him. (*Id*.)

 Plaintiff has not presented any evidence creating a genuine issue of material fact regarding whether Defendant acted with deliberate indifference to his fractured hand; rather, he disagrees with the treatment provided.  Here, there is no genuine issue of material fact regarding whether the treatment chosen by Defendant was medically unacceptable. *Toguchi*, 391 F.3d at 1058-60 (explaining that a difference of opinion about the best course of medical treatment is insufficient to raise a genuine issue that the treatment was medically unacceptable); *Marcotte v. Monroe Corrections Complex*, 394 F.Supp.2d 1289 (W.D.Wash. 2005) (inmate's disagreement with the reasonableness of a health care provider's diagnosis and treatment is not sufficient to show deliberate indifference.).  Likewise, summary judgment is appropriate because Plaintiff has not raised a triable issue that Defendant intentionally provided improper treatment for his hand. *Jett*, 439 F.3d at 1096 (explaining that deliberate indifference involves a purposeful act).  Rather, Correctional Health Services obtained medical records from Banner Desert Hospital regarding Plaintiff's June 28, 2008 hand injury, took its own x-ray of Plaintiff's hand, and based on the information obtained, determined that an ACE bandage was appropriate treatment for Plaintiff's hand.  Although Plaintiff claims that the ACE bandage was taken by jail guards, he does not identify any specific individual who took the bandage, and concedes that he never asked for the bandage to be returned.  Thus, there is no evidence that Correctional Health Services' personnel were aware that Plaintiff's ACE bandage had been taken, or were deliberately indifferent to any

requests regarding returning that bandage or providing additional care for Plaintiff's hand. Accordingly, the Court finds that there is no genuine dispute as to any material fact and the County is entitled to summary judgment as a matter of law on this claim. Fed.R.Civ.P. 56(a).

**IV. Failure to Train**

In Count III of the Second Amended Complaint, Plaintiff alleges that the County failed to train its employees to obtain medical records to verify a detainee's pre-existing medical conditions. (DSOF ¶ 25; (Doc. 91)   Proving municipal liability under 42 U.S.C. § 1983 is no easy task. A mere *respondeat superior* theory is not sufficient. Plaintiffs must show that the unconstitutional deprivation of rights arises from a governmental custom, policy or practice. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978). "A municipality's failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of person with whom the employee comes into contact." *Long v. County of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To show deliberate indifference on behalf of a municipality, a plaintiff must show, "[t]he continued adherence by policymakers 'to an approach that they knew or should know has failed to prevent tortious conduct by employees;'" "or that a violation of constitutional rights "is a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Long*, 442 F.3d at 1186 (quoting *Bd. of the County Comm'rs. v. Brown*, 520 U.S. 397, 407 (1997)).

"The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long*, 442 F.3d at 1186. A plaintiff alleging a failure to train must show: (1) he was deprived of a constitutional right, (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons with whom [its employees] are likely to come into contact;" and (3) his constitutional injury would have been avoided had the municipality properly trained those employees. *Blankenhorn v. City of Orange*, 485 F.3d

- 10 -

463, 484 (9th Cir. 2007).  A municipality is "deliberately indifferent" when the need for more or different action, "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.  *See also*, *Connick v. Thompson*, ___ U.S . ___, 131 S.Ct. 1350, 1366 (March 29, 2011) ("The District Court should have granted [defendant] judgment as a matter of law on the failure-to-train claim because [plaintiff] did not prove a pattern of similar violations that would establish that the policy of inaction [was] the functional equivalent of a decision by the city itself to violate the Constitution.") (quoting *Canton*, *supra*, at 395) (internal quotation marks omitted).  In *Connick*, a § 1983 action against a district attorney's office for a *Brady*[4] violation resulting in plaintiff's wrongful conviction and 18 years in prison, the Supreme Court stated: "To prove deliberate indifference, [the plaintiff] needed to show that Connick was on notice that, absent additional specified training, it was 'highly predictable' that the prosecutors in his office would be confounded by those gray areas and make incorrect *Brady* decisions as a result. In fact, [the plaintiff] had to show that it was so predictable that failing to train the prosecutors amounted to *conscious disregard* for defendants' *Brady* rights." *Connick*, 131 S.Ct. at 1365 (citing *Bryan Cty.*, 520 U.S. at 409; *Canton*, *supra*, at 389) (emphasis in original).  Here, the Court reversed a $14 million dollar jury verdict in favor of a prisoner and held that a district attorney's office may not be held liable under § 1983 for failure to train its prosecutors based on a single *Brady* violation.  *See also*, *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) ("A plaintiff cannot demonstrate

---

[4] Generally, *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and its progeny impose a "no fault" obligation upon prosecutors to turn over exculpatory evidence to a defendant. A prosecutor's withholding of exculpatory, material evidence is grounds for a new trial, whether the withholding was innocent, negligent, or intentional. *See*, *Faulkner v. County of Kern*, 2006 WL 1795107, * 33-34 (E.D.Cal., June 28, 2006). "A prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction is a violation of due process under *Brady v. Maryland*[.]" *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (full citation omitted).

- 11 -

the existence of a municipal policy or custom based solely on a single occurrence of unconstitutional action by a non-policymaking employee.)"

Here, Plaintiff alleges that the County, through Correctional Health Services, failed to train its employees to obtain medical records to verify detainees' pre-existing medical conditions.  (DSOF ¶ 25; Doc. 91)   However, Plaintiff has not provided evidence to create a genuine issue of material fact on this issue.  Plaintiff argues that the fact that he was given Hydrochlorothiazide, rather than Benicar, indicates that Correctional Health Services' employees were inadequately trained.   Meggie Washington, Correctional Health Services' Interim Supervisor of Staff Education, whose responsibilities include developing training programs for CHS' Health Unit Coordinators, indicates that all new Health Unit Coordinators are trained in more than 130 subjects pertinent to the requirements of their job.  (DSOF ¶ 26; Exh. H)  After training and orientation, all Health Unit Coordinators must demonstrate competency in performance as determined by their preceptor.  (DSOF ¶ 28; Exh. H)

Ms. Washington reviewed Plaintiff's Correctional Health Services' medical records and determined that the medical intake personnel complied with Correctional Health Services' policy J-E-02-E which requires that an intake receiving screening be performed on all inmates upon arrival at the intake facility to ensure urgent health needs are met, and that detainees be asked their medical/mental history, including currently prescribed medications.  (DSOF ¶ 29; Exh. H)   Ms. Washington has determined that medical intake personnel complied with Correctional Health Services' policy J-E-02-E when Plaintiff was asked about his medical history because his Correctional Health Services' records include information about Plaintiff having received treatment for his hand at Banner Desert Hospital.  (DSOF  ¶ 30; Exh. H)   Ms. Washington avows that, had staff not been trained to inquire about Plaintiff's medical history, the information about his fractured hand would not have been in his Correctional Health Services' records.  (DSOF ¶ 31; Exh. H)

Ms. Washington has further determined that Correctional Health Services' Unit Coordinator, B. Tapia, CHS # 846, properly faxed to Banner Desert Hospital a release

signed by Plaintiff on July 22, 2008 - his booking date. (DSOF ¶ 32; Exhs. H, I) The record indicates that Banner Desert Hospital responded to the medical release, because eight pages of Plaintiff's Banner Desert Hospital medical records are included in Plaintiff's Correctional Health Services' medical chart, labeled as CHS0013 through CHS0020. (DSOF ¶ 33; Exh. I)   Ms. Washington has determined that, if staff not been properly trained to obtain detainees' medical records, Plaintiff's Banner Desert Hospital records would not have been in his CHS file. (DSOF ¶ 34; Exh. H)   According to Ms. Washington, the Health Unit Coordinator involved in obtaining Plaintiff's Banner Desert Hospital records, B. Tapia, completed the training program on October 19, 2007, and demonstrated competence. (DSOF ¶ 35; Exh. H)

Additionally, Ms. Washington has determined that medical intake personnel complied with Correctional Health Services' Policy J-E-02-E by asking Plaintiff about his currently prescribed medications; as evidenced by a notation that Plaintiff was taking Benicar for hypertension. (DSOF ¶ 36; Exh. H)   Such information would not have appeared in Plaintiff's CHS records if staff had not been trained to ask about detainees' medical history. (DSOF ¶ 37, Exh. H)   Ms. Washington has also determined that, in order to obtain verification of Plaintiff's use of Benicar and having that prescription filled at Walgreens, B. Tapia, with authorization from Plaintiff, called Walgreens to verify Plaintiff's prescription. (DSOF ¶ 38; Exhs. D, H)   The authorization is identified in Plaintiff's CHS medical records as CHS0026 and states that Plaintiff's prescriptions were filled at the Walgreens Pharmacy at Broadway and Mill in Tempe, Arizona. (DSOF ¶ 39; Exhs. D, F, I)   Based upon the CHS medication verification form, identified as Plaintiff's Correctional Health Services' record CHS0024, it is reasonable to conclude that B. Tapia called the Walgreens Pharmacy at Broadway and Mill by dialing the number listed on the authorization form, 480-921-8013. (DSOF ¶ 40; Exhs. F, H, I)   It is reasonable to conclude that the Walgreens Pharmacy employee, "Mel," stated that Walgreens had no current medication profile for Plaintiff since January 2008. (DSOF ¶ 41; Exhs. H, I)   If CHS' staff not been trained to obtain detainees' prescription medication history and records, the information regarding the Walgreens

Pharmacy would not have been included in Plaintiff's CHS' medical records. (DSOF ¶ 42; Exh. H)

Based on her review of Plaintiff's intake medical records and the entries by the Health Unit Coordinator, Ms. Washington concludes that the Health Unit Coordinator acted in accordance with the training provided by CHS and properly requested Plaintiff's medical and pharmaceutical records. (DSOF ¶ 43; Exh. H)

Although Plaintiff continues to argue that the County failed to properly train its employees regarding obtaining medical history, doc. 164, he has not presented evidence which creates a genuine issue of material fact on his failure-to-train claim. Moreover, because the Court found that Defendant's subordinates are not liable for constitutional violations, Plaintiff's associated claim for failure to train likewise fails. *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*per curiam*) (holding that a public entity is not liable for § 1983 damages under a policy that can cause constitutional deprivations, when the factfinder concludes that an individual officer, acting pursuant to the policy, inflicted no constitutional harm to the plaintiff.).

In summary, Plaintiff has not presented evidence sufficient to defeat summary judgment.

Accordingly,

**IT IS ORDERED** that Maricopa County's Motion for Summary Judgment, doc. 156, is **GRANTED** and that Plaintiff's claims against Maricopa County are hereby dismissed.

Dated this 27th day of May, 2011.

Lawrence O. Anderson
United States Magistrate Judge

- 14 -