1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Brian A. Wilkins,                    )    No. CV-09-1380-PHX-LOA
                                         )
10              Plaintiff,               )    **ORDER**
                                         )
11   vs.                                 )
                                         )
12                                       )
     Joseph M. Arpaio, in his individual and)
13   official capacity as Maricopa County)
     Sheriff; Darren Dauch, in his individual)
14   and official capacity as a Maricopa County)
     Detention Officer,                  )
15                                       )
                Defendants.              )
16                                       )
     _____)
17

18          This matter is before the Court on the Motion for Summary Judgment by

19   Defendants Sheriff Joseph Arpaio and Darren Dauch. (Doc. 159) *Pro se* Plaintiff has filed

20   a response, doc. 163, to which Defendants Arpaio and Dauch have replied, doc. 166.  After

     consideration of this matter, the Court will grant summary judgment in favor of Defendants

21   Arpaio and Dauch.

22   **I.  Background**

23          Plaintiff's claims arose during his confinement at the Lower Buckeye Jail

24   ("LBJ") in Phoenix from July 22, 2008 to September 17, 2008.  (Doc. 91 at 2-3; DSOF ¶ 2[1])

25   _____

26          [1]  Citations to (DSOF ¶ __) are to Defendants Arpaio's and Dauch's Statement of

27   Facts in Support of their Motion for Summary Judgment, docs. 160-161.  Citations to "Exh.

28   __" are to Defendant Arpaio's and Dauch's supporting exhibits, docs. 160-1, 161-1.

1   Plaintiff alleges that his constitutional rights were violated by inadequate medical care,

2   overcrowding, and unsanitary living conditions - including spoiled food and polluted water.

3   (Doc. 91) Plaintiff further alleges that he was sexually assaulted by Defendant Dauch during

4   a strip search.  (*Id.*)  Plaintiff alleges that Sheriff Arpaio is liable for these violations because

5   they were the result of "a larger policy, pattern, and practice" of Defendant Arpaio.  (*Id.* at

6   5)  Plaintiff claims that the alleged violations caused him "emotional and physical pain and

7   suffering."  (*Id.* at 7)

8          Defendants Arpaio and Dauch seek summary judgment on the Second

9   Amended Complaint in "its entirety." (Doc. 159)  The Court issued a *Rand* Order[2], advising

10  Plaintiff of his obligation to respond to the summary judgment motion. (Doc. 162)  The

11  Order specifically advised Plaintiff in opposing the Motion for Summary Judgment, it was

12  not sufficient to rely on the allegations in his Complaint. (*Id.* at 2)  Rather, Plaintiff, "must

13  set out specific facts in declarations, depositions, answers to interrogatories, or authenticated

14  documents . . . that contradict the facts shown in Defendants' declarations and documents and

15  show there is a genuine issue of material fact for trial." (*Id.*)  The Order warned that "[i]f you

16  do not submit your own evidence in opposition, summary judgment, if appropriate, may be

17  entered against you."  (*Id.*)  Additionally, the Court directed Plaintiff to file a separate

18  statement of facts in support of his opposition to the Motion for Summary Judgment in

19  accordance with Local Rule ("LRCiv") 56.1(b). (*Id.*)  Although Plaintiff submitted a

20  response, doc. 163, to Defendants' Motion, it does not satisfy the requirements of

21  Fed.R.Civ.P. 56 or LRCiv 56.1(b).  Specifically, Plaintiff's response does not include a

22  separate statement of facts, and does not set out specific facts in the form of "declarations,

23  depositions, answers to interrogatories, or authenticated documents." (Docs. 162-163);

24  Fed.R.Civ.P. 56(c); LRCiv 56.1.  Plaintiff's noncompliance with Rule 56(c) and LRCiv 56.1

25  alone supports entry of summary judgment against Plaintiff.  Nevertheless, as set forth

26  below, the Court has analyzed Plaintiff's various claims against Defendants Arpaio and

27

28          [2] *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*).

1    Dauch. The Court concludes that Plaintiff has not shown the existence of a genuine dispute

2    of material fact, and Defendants are entitled to summary judgment as a matter of law.

3    **II. Summary Judgment Standard**

4              A district court must grant summary judgment if the pleadings and supporting

5    documents, viewed in the light most favorable to the nonmoving party, "show that there is

6    no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

7    of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger*

8    *v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).  The moving party bears

9    the initial burden of presenting the basis for its motion and identifying those portions of the

10   record which demonstrate the absence of a genuine dispute as to any material fact.  *Celotex*,

11   477 U.S. at 323.   If the moving party meets its initial burden, the burden shifts to the

12   opposing party to demonstrate an existing genuine dispute as a material fact.   Substantive

13   law determines which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

14   (1986); *Jesinger*, 24 F.3d. at 1130.  In addition, "[o]nly disputes over facts that might affect

15   the outcome of the suit under the governing law will properly preclude the entry of summary

16   judgment."  *Anderson*, 477 U.S. at 248.  The dispute must be genuine, that is, "the evidence

17   is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

18             Summary judgment is appropriate against a party who "fails to make a showing

19   sufficient to establish the existence of an element essential to that party's case, and on which

20   that party will bear the burden of proof at trial."  *Id.* at 322; *Citadel Holding Corp. v. Roven*,

21   26 F.3d 960, 964 (9th Cir. 1994).  The party opposing summary judgment "may not rest upon

22   the mere allegations or denials of [the party's] pleadings, but. . . must set forth specific facts

23   showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e);  *Matsushita Elec. Indus.*

24   *Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  *Brinson v. Lind Rose Joint*

25   *Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).  There is no issue for trial unless there is

26   sufficient evidence favoring the nonmoving party.  If the evidence is merely colorable or is

27   not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-

28   50.  However, "[t]he evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his [or her] favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

The facts which may establish a genuine issue of fact must *both* be in the district court's file and set forth in the response. *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001).  The trial court

> may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers.  Though the court has discretion in appropriate circumstances to consider other materials, it need not do so. *The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.*

*Id.* at 1031 (emphasis added).

### III. Claims against Defendant Arpaio

Plaintiff asserts that Defendant Arpaio is liable, in his official and individual capacity, for the alleged constitutional violations.[3]

### A. Claims Against Sheriff Arpaio in His Official Capacity

Municipal liability under § 1983 can result from the unconstitutional actions or omissions of a municipality's final policymaker. *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that a municipality's policy or custom that inflicts a constitutional injury may subject the municipality to § 1983 liability whether the policy or custom was "made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy"); *City of Canton v. Harris*, 489 U.S. 378, 388-90 (1989) (holding

---

[3]  Because claims for damages against county officials in their official capacities are effectively claims against the county itself, a claim against Arpaio in his official capacity is essentially the same as asserting that claim against Maricopa County. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). Thus, to the extent that Plaintiff's Second Amended Complaint can be construed as asserting violations by Maricopa County, such claims are duplicative of the official capacity claim against Sheriff Arpaio. *Id.*

1    that the failure of a municipality's policymakers to ensure adequate police training may serve

2    as the basis for § 1983 liability). Whether a particular official has final policymaking

3    authority is a matter of state law. *McMillian v. Monroe County*, 520 U.S. 781, 786 (1997);

4    *Cortez v. County of L.A.*, 294 F.3d 1186, 1189 (9th Cir. 2002) ("To determine whether the

5    Sheriff was acting as the final policymaker for the County, we follow the analytical

6    framework set forth in *McMillian*.").

7              The parties do not dispute that Sheriff Arpaio has final policymaking authority

8    under Arizona law with respect to the operation of the Maricopa County jails.[4] Ariz. Const.

9    Art. XII, §§ 3-4 (providing that there shall be created in and for each County of the State a

10   Sheriff and that the Sherif's duties, powers, and qualifications shall be as prescribed by law);

11   Arizona Revised Statute ("A.R.S.") § 11-441(A)(5) ("The sheriff shall. . . [t]ake charge of

12   and keep the county jail. . . and the prisoners in the county jail."); *Flanders v. Maricopa*

13   *County*, 203 Ariz. 368, 54 P.3d 837, (Az.Ct.App. 2002) ("The County acknowledged that the

14   Sheriff was its chief policymaker for [Tent City]."); *Judd v. Bollman*, 166 Ariz. 417, 803

15   P.2d 138, 139-40 (Az.Ct.App. 1991) (stating that a sheriff has the duty "to maintain and

16   operate the county jails pursuant to the Arizona Constitution and A.R.S. § 11-441").

17             The Ninth Circuit has held that there are two routes to municipal liability under

18   § 1983. *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002). The first route

19   applies when a municipality inflicts a constitutional injury through its policy, custom, or

20   practice. *Id*. (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404

21   (1997)). Under this route, the plaintiff must satisfy traditional § 1983 requirements and show

22   that "the municipality acted with 'the state of mind required to prove the underlying

23   violation,' just as a plaintiff does when he or she alleges that a natural person has violated

24   his federal rights." *Id.* (quoting *Brown*, 520 U.S. at 405). The second route to municipal

25

───────────────

26             [4] Whether a particular official has "final policymaking authority" is a matter of state

27   law. *McMillian*, 520 U.S. at 786.

28

liability arises from the Supreme Court's decision in *City of Canton v. Harris*. Under this route, a municipality becomes responsible, through its omissions, for a constitutional violation committed by one of its employees. *Id.* at 1186 (citing *City of Canton*, 489 U.S. at 387). A plaintiff need not prove that the municipality acted with actual, subjective intent. *Id*. Rather, a plaintiff "must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation," and yet failed to act. *Id*. This kind of deliberate indifference is found when the need to remedy the omission is so obvious, and the failure to act so likely to result in the violation of rights, that the municipality reasonably can be said to have been deliberately indifferent when it failed to act. *Id*. at 1195.

### B. Claims Against Defendant Arpaio in His Individual Capacity.

Title 42 U.S.C. § 1983 liability may be imposed against a public official in his individual capacity for his own culpable actions or inactions if he fails to properly supervise and control subordinates; acquiesces in the constitutional deprivations complained of; or engages in conduct that shows a reckless or callous indifference to the rights of others. *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations and quotations omitted); *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000) (same); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ( "[Section 1983 liability] arises only upon a showing of personal participation by the defendant. . . . A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.").

In addressing Plaintiff's claims, the Court will consider whether Defendant Arpaio is liable in his official and/or individual capacity.

### IV.  Conditions of Confinement and Medical Care /Pretrial Detainee

Claims by pretrial detainees, such as Plaintiff, are analyzed under the Fourteenth Amendment's Due Process Clause, which protects a pretrial detainee from punishment prior to an adjudication of guilt in accordance with due process of law. *Bell v. Wolfish*, 441 U.S. 520, 534-35. A pretrial detainee's due process rights are, at least, as great as a convicted prisoner's Eighth Amendment rights. *City of Revere v. Massachusetts Gen.*

*Hosp.*, 463 U.S. 239, 244 (1983); *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003) ("[E]ven though the pretrial detainees' rights arise under the Due Process Clause, the guarantees of the Eighth Amendment provide a minimum standard of care for determining their rights. . . . ").

A pretrial detainee's desire to be free from discomfort does not rise to the level of a fundamental liberty interest under the Fourteenth Amendment:

> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. Traditionally, this has meant confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial. Whether it be called a jail, a prison, or a custodial center, the purpose of the facility is to detain. Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

*Bell*, 441 U.S. at 537.  As a minimum standard, however, the Eighth Amendment requires that jail officials ensure that inmates receive adequate food, clothing, shelter, sanitation, and medical care and take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Hoptowit v. Ray (Hoptowit I)*, 682 F.2d 1237, 1246 (9th Cir. 1982), *amended by*, 135 F.3d 1318 (9th Cir. 1998).  The Eighth Amendment protects against conditions of confinement likely to cause serious illness and needless suffering in the future: "a remedy for unsafe conditions need not await a tragic event." *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

To evaluate the constitutionality of pretrial detention conditions that are not alleged to violate any express constitutional guarantee, the court must determine whether those conditions amount to punishment of the detainee. *Bell*, 441 U.S. at 535; *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008); *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004). "For a particular governmental action to constitute punishment, the action must cause the detainee to suffer some harm or disability, and the purpose of the

1    action must be to punish the detainee." *Joseph v. Arpaio*, 2008 WL 243690, * 3 (D.Ariz., Jan.

2    25, 2008) (citing *Demery*, 378 F.3d at 1029; *Bell*, 441 U.S. at 538). To constitute punishment,

3    the governmental action must cause harm or disability that either significantly exceeds or is

4    independent of the inherent discomforts of confinement, but it does not need to cause a harm

5    independently cognizable as a separate constitutional violation, *e.g.*, deprivation of First

6    Amendment rights. *Demery*, 378 F.3d at 1030. To determine whether an action's purpose is

7    punitive, in the absence of evidence of express intent, a court may infer that the purpose of

8    a particular restriction or condition is punishment if the restriction or condition is not

9    reasonably related to a legitimate governmental objective or excessive in relation to the

10   legitimate governmental objective. *Pierce*, 526 F.3d at 1205 (citing *Bell*, 441 U.S. at 539).

11   Legitimate governmental objectives that may justify adverse detention conditions include

12   maintaining security, order, and operating the detention facility in a manageable fashion. *Id.*

13   "[M]aintaining institutional security and preserving internal order and discipline are essential

14   goals that may require limitation or retraction of the retained constitutional rights of both

15   convicted prisoners and pretrial detainees." *Bell*, 441 U.S. at 546.  *See also*, *Byrd v.*

16   *Maricopa County Sheriff's Dept.*, 629 F.3d 1135, 1140 (9th Cir. 2011) (*en banc*), *cert.*

17   *denied*, ___ U.S. ___, 2011 WL 1231308 (June 6, 2011) ("[I]n the absence of evidence of

18   an intent to punish, or evidence that Maricopa's actions were unrelated to a 'legitimate

19   governmental objective,' the district court properly granted judgment as a matter of law in

20   favor of O'Connell and Arpaio on Byrd's Fourteenth Amendment substantive due process

21   claim." (citing *Bell*, 441 U.S. at 539 n. 20).

22            **A. Overcrowding - Defendant Arpaio**

23            Plaintiff alleges that he suffered injury as a result of overcrowding in the

24   holding cells while detained in the LBJ. (Doc. 91 at 6)  He alleges that Defendant Arpaio

25   maintains a policy and practice of "forcing upwards of 60 people into small confined holding

26   cells for hours at a time . . . ."  (*Id.*)  For the reasons set forth below, Defendant Arpaio is

27   entitled to summary judgment on this claim in both his individual and official capacity.

28

1    Although pretrial detainees' claims arise under the Fourteenth Amendment Due

2    Process Clause, the Eighth Amendment's guarantees provide a minimum standard of care for

3    determining a pretrial detainee's rights. *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986).

4    Overcrowding can violate the Eighth Amendment if it results in the specific effects that form

5    the basis for an Eighth Amendment violation, such as, by causing increased violence, diluting

6    constitutionally required services to the extent that they fall below the minimum Eighth

7    Amendment standards, or reaching a level "unfit for human habitation." *Hoptowit*, 682 F.2d

8    at 1249; *Toussaint v. Yockey*, 722 F.2d 1490, 1492 (9th Cir. 1984) (affirming preliminary

9    injunction prohibiting double-celling of administratively segregated prisoners where district

10   court found "double-celling engenders violence, tension and psychiatric problems.").  But

11   overcrowding cannot be found to be unconstitutional under the Eighth Amendment without

12   evidence that it has, in fact, increased violence, deprived pretrial detainees of constitutionally

13   required services, or violated contemporary standards of decency. *Rhodes v. Chapman*, 452

14   U.S. 337, 347-49 (1981).  Consideration must also be given to how much time inmates must

15   spend in their cells each day, whether any increased violence was disproportional to the

16   increase in population itself, and whether overcrowding has caused any other constitutional

17   deprivations. *Id.*

18   On July 29, 2008, Plaintiff was transported to the Maricopa County Superior

19   Court for a court appearance. (DSOF ¶ 24)  He left LBJ on July 28, 2008 and returned on

20   July 29, 2008. (DSOF ¶¶ 24, 25)  On August 11, 2008, Plaintiff was again transported to the

21   Superior Court for another court appearance. (DSOF ¶ 26, 27)  He departed LBJ on August

22   10, 2008 and returned on August 11, 2008. (DSOF ¶¶ 26, 27)  Plaintiff had another court

23   appearance on September 16, 2008 and was transported to the Superior Court.  (DSOF ¶ 28)

24   Plaintiff left LBJ on September 15, 2008 and returned on September 16, 2008.  (DSOF ¶¶

25   28, 29)  Plaintiff was released from custody on September 17, 2008. (DSOF ¶ 2)

26   / / /

27   / / /

28   / / /

1    At his deposition, Plaintiff testified that he maintained a journal while in LBJ and later

2    wrote a blog[5] posting his journal entries. (DSOF ¶¶ 4, 5; Exh. 1 at 27-28)  Plaintiff's 50 blog

3    entries correspond to his 58 days in jail, and that his blog entries include all of the

4    information from his journal entries except for personal items. (DSOF ¶¶ 5, 6; Exh. 1 at 29-

5    30; Exh. 2)   Plaintiff's blog documents five days that he was in holding cells, which

6    correspond to Day 1, Day 2, Day 8, Day 17, and Day 21. (DSOF ¶ 31; Exh. 2)  Within these

7    five blog entries, Plaintiff describes crowded cells in which "many" inmates were laying on

8    the floor.  (DSOF ¶¶ 31-36; Exh. 2)   Plaintiff testified at his deposition that, at most, he

9    would have been in a holding cell with sixty other inmates for "hours."  (DSOF ¶¶ 34, 37;

10   Exh. 2)

11   Sergeant Martin Spidell, a Maricopa County Sheriff's Office ("MCSO")

12   employee, was assigned to LBJ Central Intake when Plaintiff was processed on July 22,

13   2008.  (DSOF ¶ 15; Exh. 4; doc. 160-7 at 4-5)  Officer Mary Cordero, also a MCSO

14   employee, was also assigned to LBJ Intake Unit during that period.  (DSOF ¶ 44; Exh. 8;

15   doc. 160-8 at 15-17)  Sergeant Spidell attests that on July 22, 2008 and July 23, 2008, 333

16   inmates and 342 inmates were processed for booking on these days, respectively. (DSOF ¶

17   16; Exh. 4)  During the various days that Plaintiff was processed through Intake, the number

18   of inmates processed ranged from 492 to 623.  (DSOF ¶ 30; Exh. 5)  The number of inmates

19   in a holding cell varied depending on the number of people being processed in and

20   transported to court.  (DSOF  ¶ 17, ¶ 48, 49; Exh. 8)  Sergeant Spidell and Officer Cordero

21   attest that, due to security concerns, individuals are placed in holding cells during the intake

22   process and during inmate movement activities.  (DSOF ¶¶ 17, 20, 43, 46; Exh. 4)  Sergeant

23   Spidell attests that, based on the number of intake holding cells, 18, and the capacity of

24   holding cells at Central Intake, 754 inmates can be processed on any given day without

25   causing overcrowded holding cells. (DSOF ¶¶ 21, 47-49; Exh. 4) The holding cells vary in

26

27   [5] A blog is "a Web site that contains an online personal journal with reflections,
     comments, and often hyperlinks provided by the writer."
28   www.merriam.webster.com/dictionary/blog, June 4, 2011.

1  size including: 10' x 7'; 19' x 10'; and 19' x 15'.  (DSOF ¶ 47; Exh. 8)  The intake area is

2  not a housing area and inmates are moved out of holding cells as soon as practical. (DSOF

3  ¶ 45; Exh. 8)  Sergeant Michelle Kraetsch, another MCSO employee, was assigned to the

4  LBJ Intake Unit during the relevant time frame - July to September, 2008. (DSOF ¶ 22)

5          Plaintiff contends that he suffered physical injury due to overcrowding.  (Doc.

6  91)  Plaintiff contends that his witnesses to overcrowding are Jay Raoofi and Rodney Smith.

7  (DSOF ¶ 39; Exh. 1 at 13-23; doc. 163)  Plaintiff contends that Rodney Smith was in the

8  holding cells with him and will testify that they were overcrowded.  (DSOF ¶ 40; doc. 163)

9  However, on the dates Plaintiff was moved in and out of LBJ, Rodney Smith was not

10  transported in and out of LBJ. (DSOF ¶ 41; Exh. 6)  Additionally, Plaintiff concedes that Jay

11  Raoofi was not in custody at the same time as Plaintiff.  (DSOF ¶ 42; Exh. 7; doc. 163 at 2)

12  Moreover, Plaintiff never filed a grievance regarding overcrowding of his holding cells.

13  (DSOF  ¶ 56; Exh. 1 at 23)

14          While Plaintiff alleges he was injured as a result of overcrowding in intake or

15  his holding cells, he has offered no evidence of such injury. (Doc. 163)  At most, Plaintiff

16  alleges overcrowding, which, by itself, is not unconstitutional *per se*, but it can result in

17  certain effects that form the basis for a constitutional violation.  *Toussaint*, 722 F.2d at 1492

18  ("[t]he Supreme Court held that in and of itself double-celling is not unconstitutional.")

19  (citing *Rhodes v. Chapman*, 452 U.S. 337 (1981)); *Garcia v. Maricopa County Sheriff's*

20  *Office*, 2008 WL 138081, * 3 (D.Ariz., January 11, 2008) (citing *Hoptowit*, 682 F.2d at 1249).

21  In demonstrating that there is insufficient evidence to support Plaintiff's claim that

22  overcrowding gave rise to a constitutional violation, Defendants have met their initial burden

23  of establishing the absence of a genuine dispute of material fact.  *Celotex*, 477 U.S. at 325.

24          The burden then shifted to Plaintiff to articulate facts showing that a disputed

25  material fact remains. Plaintiff may not rest on mere allegations or denials of his unverified

26  pleadings, but must "go beyond the pleadings by his own affidavits, or the 'depositions,

27  answers to interrogatories, and admissions on file' designate specific facts showing that there

28  is a genuine issue for trial."  *Id*. at 324 (citing Fed.R.Civ.P. 56).

1    In response to Defendants' Motion for Summary Judgment, Plaintiff has not

2    presented any affidavits or evidence in support of his claims. (Doc. 163)  Rather, he merely

3    reiterates his allegations.  Plaintiff's conclusory allegations of overcrowding are too vague

4    and general to support a conclusion that overcrowding at the LBJ led to violence or

5    inhabitable conditions of confinement. Plaintiff's sworn statements are insufficient to

6    demonstrate a constitutional deprivation resulting from overcrowding. *Rhodes*, 452 U.S. at

7    348.  Plaintiff's allegations are not corroborated by any other testimony or other persuasive

8    evidence. *Villarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th Cir. 2002) (stating

9    that "this court has refused to find a 'genuine issue' where the only evidence presented is

10   'uncorroborated and self-serving' testimony.") (citations omitted).

11   Finally, there is nothing in the record to support a finding that crowding at the

12   LBJ was arbitrary or purposeless as to appear on its face as punishment. Further, Defendants

13   have presented evidence that the holding cells are necessary to safely move inmates from one

14   destination to another and within the jail facility itself, and to ensure the security of the

15   facility. Legitimate governmental objectives that may justify adverse detention conditions

16   include maintaining security and order and operating a detention facility in a manageable

17   fashion. *Pierce*, 526 F.3d at 1205. "[M]aintaining institutional security and preserving

18   internal order and discipline are essential goals that may require limitation or retraction of

19   the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441

20   U.S. at 546.

21   Even construing the evidence in Plaintiff's favor, it fails to establish facts that

22   present a genuine issue for trial.  Consequently, Plaintiff has failed to sustain his burden in

23   opposing Defendants' Motion, and the Court will grant summary judgment for Defendant

24   Arpaio on Plaintiff's overcrowding claim.

25   **B. Food Quality - Defendant Arpaio**

26   Plaintiff further alleges that he suffered a constitutional deprivation because

27   he was "given moldy bread, spoiled, smelly meat substances, and rotten fruits for a 'breakfast

28   meal,' and some sort of concoction which can only be described as vomit-looking, for a

1    'dinner' meal, per the policy of Maricopa County Sheriff, Joseph M. Arpaio. . . ." (Doc. 91

2    at 4)  On his blog detailing his 58-day stay in LBJ, Plaintiff mentions food twelve times.

3    (DSOF ¶ 76; Exh. 2)  Plaintiff reports receiving "rotten nasty oranges on "Day 12." (DSOF

4    ¶ 77; Exh. 2) He mentions rotten plums or overripe oranges on "Day 8," but does not specify

5    if those food items were given to him. (DSOF ¶ 77)  Plaintiff's blog entries also describe the

6    appearance of the food, or the variety of bread that was served - "frozen rolls, or really flaky

7    slices, and cinnamon raisin bread." (DSOF ¶ 78; Exh. 2 - doc. 160-3 at 16)  During his

8    deposition, Plaintiff testified that the food did not look very good, and described it as "puke

9    looking."  (DSOF ¶ 79; Exh. 1 at 12)

10              In support of their Motion for Summary Judgment, Defendants submit the

11    declaration of Laura Belcourt, currently the Quality Coordinator for the MCSO Food

12    Services. (Exh. 10, Declaration of Laura Belcourt, doc. 161-1 at 2-4) During Plaintiff's 2008

13    incarceration, she was one of two staff Sanitarians responsible for inspecting the MCSO

14    production facility and satellite kitchens. (DSOF ¶¶ 58, 59; Exh. 10)  Belcourt's duties

15    included ensuring that meals prepared and delivered to the jails met food safety requirements

16    established by Maricopa County Environmental Services, as well as the MCSO Safety,

17    Sanitation, and Nutrition Policies.  (DSOF ¶ 59; Exh. 10, attachments A, B, C)   During

18    2008, two Quality Assurance personnel were responsible for monitoring the food quality.

19    (DSOF ¶ 60; Exh. 10)

20              The MCSO's Food Services provide two meals daily to LBJ's inmates, a

21    "sack" lunch, and a hot evening meal. (DSOF ¶¶ 61, 62; Exh. 10)  Each week, the Quality

22    Assurance staff visits the LBJ facility to monitor food delivery, storage, and handling.   The

23    Quality Assurance staff also trains detention staff and answers questions regarding food

24    safety. (DSOF ¶ 63; Exh. 10)   All food is inspected upon receipt, and is stored according to

25    food storage guidelines. (DSOF ¶¶ 64-68, 70, 72; Exh. 10)  Food is also monitored during

26    its receipt, production, and delivery to ensure safety and quality. (DSOF ¶ 64; Exh. 10)

27    Defendants admit that spoiled fruit or moldy bread may occasionally be served because they

28    lack preservatives. (*Id*.)  However, efforts are made to minimize these issues, including

1 providing additional sack lunches to be used as replacements if an inmate reports a quality

2 issue or a missing item from his meal. (DSOF ¶¶ 71, 73; Exh. 10)

3        Plaintiff admits that he never complained about the quality of his food when

4 it was served to him, and never filed a grievance about his food.  (Doc. 160, Exh. 1 at 15-16)

5 Plaintiff concedes that the "witness" who would corroborate his allegations about the food

6 quality was not incarcerated during the same time Plaintiff was.  (*Id*. at 14)  Plaintiff has also

7 failed to identify other individuals who purportedly would substantiate his claims regarding

8 the food quality. (DSOF ¶¶ 80-83; Exh. 1 at 14)

9        A supervisory official may be liable if he implements a policy "so deficient that

10 the policy 'itself is a repudiation of constitutional rights' and is the 'moving force of the

11 constitutional violation.'" *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir.

12 1991).  To base Defendant Arpaio's liability on a custom or policy, Plaintiff must identify

13 the specific custom or policy and establish a "direct causal link" between that policy and the

14 alleged unconstitutional deprivation. *City of Canton*, *supra*.  Plaintiff testified that Defendant

15 Arpaio did not personally prepare or serve him any meals, and he could not identify a policy

16 that directs MCSO staff to serve inedible food.  (DSOF ¶¶ 84, 85; Exh. 1 at 21)  On the other

17 hand, Defendants have produced the MCSO's food policies and the affidavit of the Staff

18 Sanitarian, who worked for MCSO during the relevant period.  This evidence establishes that

19 the food served while Plaintiff was incarcerated in LBJ were produced, delivered, stored, and

20 handled in a manner which did not give rise to a constitutional violation.

21        "The Eighth Amendment requires only that prisoners receive food that is

22 adequate to maintain health; it need not be tasty or aesthetically pleasing. The fact that food

23 occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not

24 amount to a constitutional deprivation." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir.

25 1993) (providing Nutraloaf, a nutritionally adequate blend of fresh ingredients designed to

26 be given to inmates without eating utensils is not a deprivation serious enough to violate the

27 Eighth Amendment); *Graves v. Arpaio*, 2008 WL 4699770, * 11 (D.Ariz., Oct 22, 2008).

28 In addition to being "nutritionally adequate," food provided to inmates must also  be

1   "prepared and served under conditions which do not present an immediate danger to the

2   health and well being of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559,

3   570-71 (10th Cir. 1980).

4          Even when construing the evidence in Plaintiff's favor, crediting his statements

5   that he received moldy bread or rotten fruit a few times, and that the food looked

6   unappetizing, the evidence fails to establish sufficient facts to create a genuine issue for jury

7   resolution. Additionally, a claim that a policy or custom is unconstitutional, "may not be

8   predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient

9   duration, frequency and consistency that the conduct has become a traditional method of

10  carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted).

11  Plaintiff has failed to identify a policy or custom, and establish a direct causal link between

12  that policy or custom and the alleged constitutional violation. Finally, Plaintiff has not

13  presented any evidence creating a genuine issue regarding whether the food served at LBJ

14  caused Plaintiff to suffer some harm or "disability," and the purpose of occasionally-served

15  moldy bread or spoiled fruit was to punish Plaintiff. *Demery*, 378 F.3d at 1030. In short,

16  Plaintiff has failed to satisfy his burden, and Defendant Arpaio is entitled to summary

17  judgment, in his individual and official capacity, on the food quality claim.

18          **C. Drinking Water Quality - Defendant Arpaio**

19          Plaintiff further alleges that Defendant Arpaio's custom or policy pertaining

20  to the delivery of drinking water to Plaintiff's cell resulted in a constitutional violation.

21  Plaintiff alleges that "[t]he water supplied to the Plaintiff at the 'Lower Buckeye Jail' comes

22  from a toilet and looks very cloudy and polluted." (Doc. 91 at 4, 7)

23          During his deposition, Plaintiff testified that his allegation that the drinking

24  water "comes from the toilet," is based on the configuration of the toilet, sink, and drinking

25  fountain. (DSOF ¶¶ 104, 105; Exh. 1 at 23, 24; Exh. 13)  The configuration at the LBJ is

26  widely used in correctional facilities. (DSOF ¶ 102; Exh. 12)  Plaintiff explained that by

27  "polluted," he means not clean.  (DSOF ¶ 107; Exh. 1 at 26)  In support of their Motion for

28  Summary Judgment, Defendants presented evidence regarding the drinking water at LBJ.

The City of Phoenix' Water Services Department performs routine testing of the drinking water distribution systems to ensure the safety of the water delivered to its customers. (DSOF ¶ 87; Exh. 11, Declaration of Ron E. Maze) Ron Maze is the Collection Division's Superintendent and Interim Pollution Control Superintendent for the City of Phoenix. (DSOF ¶ 86; Exh. 11, attachment A) The LBJ facility's water is monitored from a distribution monitoring station at 27th Avenue and Buckeye road. (DSOF ¶ 88; Exh. 11) The water samples from this monitoring station indicate that the drinking water delivered to the LBJ during the relevant period in 2008 was within standards.  (DSOF ¶¶ 90-94; Exh. 11)

The Facilities Management Deputy Director for Maricopa County, Rick Barker, reviewed the plumbing schematic for the LBJ facility.  (DSOF ¶¶ 95, 96; Exh. 12, attachment A)  These schematics reflect that the water entering the building from the City of Phoenix' Water Department is delivered to the LBJ facility and to the individual cells through pipes that are separate from the pipes that carry waste water from the sink basin out of the cells and out the building. (DSOF ¶¶ 97-99)   The water that is delivered to the cells does not mix with the waste water traveling out of the cell. (DSOF ¶ 100; Exh. 12)   This method of water delivery and circulation is used in governmental, residential, and commercial buildings. (DSOF ¶ 101; Exh. 12)

Prison and jail conditions, such as, poor plumbing and sewage systems rise to the level of a constitutional violation when they appear "in such disrepair as to deprive inmates of basic elements of hygiene and seriously threaten their physical and mental well-being." *Hoptowit*, 753 F.2d at 783.   To evaluate the constitutionality of pretrial detention conditions that are not alleged to violate any express constitutional guarantee, a district court must determine whether those conditions amount to punishment of the detainee. *Bell*, 441 U.S. at 535; *Demery*, 378 F.3d at 1029. "[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Id*. at 1030 (citing *Bell*, 441 U.S. at 537 ("Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable

1  desire to live as comfortably as possible and with as little restraint as possible during

2  confinement does not convert the conditions or restrictions of detention into 'punishment.'").

3          Defendants have shown that there is insufficient evidence to support Plaintiff's

4  claim that the configuration of the toilet/sink/drinking fountain gave rise to a constitutional

5  violation.  Thus, Defendants have met their burden of establishing the absence of a dispute

6  as to a material fact.  *Celotex*, 477 U.S. at 325.  The burden shifted to Plaintiff to set forth

7  facts showing a genuine dispute of material fact remains.  Plaintiff cannot rest on his

8  allegations, but must "go beyond the pleadings and by his own affidavit, or by the

9  'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

10 showing that there is a genuine issue for trial." *Id.* at 324 (citing Fed.R.Civ.P. 56).  Plaintiff

11 has not offered any specific facts in support of his opposition to summary judgment.  He has

12 not offered any evidence to corroborate his claim that he was forced to drink "polluted

13 water." Plaintiff's conclusory allegations regarding polluted water are insufficient to survive

14 summary judgment. *Taylor*, 880 F.2d at 1045 ("A summary judgment motion cannot be

15 defeated by relying solely on conclusory allegations unsupported by factual data." (citing

16 *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)). There is no evidence

17 that Plaintiff suffered any harm or disability as a result of the configuration of the toilet, sink,

18 and drinking fountain or the alleged polluted water. (Doc. 163)  Additionally, Plaintiff has

19 not presented evidence that this configuration was designed by Defendant Arpaio, or

20 designed pursuant to his policy or custom, to punish Plaintiff.  Plaintiff has not presented any

21 evidence sufficient to defeat Defendants' Motion for Summary Judgment.

22      **D.  Medical Care/Training  - Defendant Arpaio**

23          In Counts I and III, Plaintiff alleges that, as result of inadequate training

24 regarding inquiring about detainees' medical history, he received inadequate medical care -

25 denial of a splint for Plaintiff's broken hand and denial of blood pressure medication - in

26 violation of the Fourteenth Amendment.  (Doc. 91 at 2-7; 9)  Although Defendants' Motion

27 for Summary Judgment did not specifically address these claims, Defendants moved for

28 summary judgment on the complaint in "its entirety."  (Doc. 159)  Moreover, Plaintiff does

1   not allege that Defendant Arpaio was personally responsible for providing medical care to

2   Plaintiff. (Doc. 91)  To the extent that Plaintiff alleges Defendant Arpaio is liable for the

3   alleged constitutional violation resulting from the inadequate medical care which he received

4   as a result of a failure to train in his official capacity, as the official policymaker, as discussed

5   above, Sheriff Arpaio's actions and the actions of Maricopa County are the same.  Therefore,

6   for the reasons articulated in the Court's May 27, 2011 Order, doc. 169, granting summary

7   judgment in favor of Maricopa County on these same claims, Sheriff Arpaio in his official

8   capacity is also entitled to summary judgment on these claims.

9       **V.  Sexual Assault  - Defendants Arpaio and Dauch**

10              In Count II of the unverified Second Amended Complaint, Plaintiff alleges that

11  on August 19 or 20, 2008, he was sexually assaulted when a team of MCSO's armed guards,

12  called Special Response Team ("SRT"), entered the cell block. (Doc. 91 at 8)  Plaintiff

13  alleges that Defendant Dauch told him that "black inmates [were] suspected of having

14  marijuana in their cells." (*Id*.)   Although Plaintiff told Defendant Dauch he had none,

15  Plaintiff alleges that Defendant Dauch "commenced to grab the Plaintiff's genitals and fondle

16  them for several seconds, saying he was 'searching for contraband,' while the Plaintiff's

17  cellmate stood right there." (*Id*.)   Plaintiff alleges that "Defendant Dauch then spread the

18  Plaintiff's buttocks, [then] told the Plaintiff to put his boxers back on and head downstairs."

19  (*Id*.) Plaintiff claims he was assaulted in retaliation for pursuing a grievance about guards

20  destroying his mail. (*Id*.)  Plaintiff asserts that he did not report the incident and avoided jail

21  employees for the remainder of his incarceration due to the "trauma, emotional distress, and

22  sheer embarrassment" that the incident caused. (*Id*. at 9)

23              As  previously  stated,  Plaintiff  kept  a  journal  during  his  incarceration  and

24  posted his journal entries on a blog after his release. (DSOF ¶¶ 6, 7; Exh. 2)  Plaintiff's blog

25  documents that the challenged strip search occurred on August 20, 2008.  (DSOF ¶ 112; Exh.

26  14)  Plaintiff testified at his deposition that he was unsure of the date and time of the strip

27  search and sexual assault. (DSOF ¶¶ 6-9, 15; Exh. 1 at 34)  Plaintiff contends that the "SRT

28

1   guy" and Defendant Dauch are one in the same, and that all "the individuals in police-like

2   uniforms are all simply jail guards to the Plaintiff."  (DSOF ¶ 116; doc. 163 at 5)

3          The LBJ is divided into three units: Intake Unit, the Psychiatric Unit, and the

4   Custody Unit. (DSOF ¶ 136; Exh. 21) The LBJ Custody Unit has 12 housing units, consisting

5   of 24 Pods. (DSOF ¶ 137; Exh. 21)  Defendants have produced evidence that a cell and

6   inmate strip search was conducted at the LBJ on August 19, 2008 and that the search of the

7   Tower and Pod in which Plaintiff was housed began at approximately 9:12 p.m. (DSOF ¶¶

8   118, 119; Exhs. 15, 16, 17)  The cell and inmate search was conducted due to the reported

9   loss of Correctional Health Services' ("CHS") keys. (DSOF ¶ 120; Exh. 17, doc. 161)  SRT

10  members did, in fact, participate in the search. (*Id*.) The MCSO's records for August 20,

11  2008, however, do not document a security override or cell and inmate strip search of the

12  LBJ on that date.  (DSOF 121; Exh. 18)

13         Sergeant Richard Kabel is an MCSO employee who is familiar with MCSO

14  policy  DH-3 regarding contraband control. (DSOF ¶¶ 122, 123; Exh. 19, attachment A, doc.

15  161-4 at 2-4)   In-custody inmates may be strip searched for any of the reasons specified in

16  Policy DH-3. (DSOF ¶ 124)  Strip searches are "a visual scan of the inmate's skin after all

17  clothing has been removed [and] may include a visual body cavity search."  (DSOF ¶ 126;

18  Exh. 19, attachment A)   The loss of the CHS' keys would trigger a search which would be

19  consistent with the MCSO's policy to conduct a strip search to locate the keys.  (DSOF ¶

20  127; Exh. 19)  Lieutenant Ernest Alcala is another MCSO employee familiar with the policy

21  regarding controlling contraband as the present Commander of the Special Response Team.

22  (DSOF ¶¶ 128, 129; Exh. 20, doc. 161-6 at 2-3)  The MCSO detention officers are trained

23  to conduct various types of searches at the MCSO Academy as part of detention officer basic

24  training.  (DSOF ¶ 133; Exh. 20)

25         Defendant Dauch is an MCSO employee and was assigned to LBJ intake

26  during the relevant period, July to September 2008.  (DSOF ¶ 135; Exh. 21)  Defendant

27  Dauch received training on conducting strip searches and adheres to that training when

28  involved in inmate strip searches. (DSOF ¶ 142; Exh. 21)  In August 2008, Defendant Dauch

was participating in the Reserve Deputy Program.   (DSOF ¶ 139; Exh. 21)  On August 19, 2008, Sergeant Dauch began his shift at 6:00 a.m., which would usually end at 2:00 p.m. (DSOF 139; Exh. 21, attachment 2)  However, because of the Reserve Deputy Program, Defendant Dauch signed off work at 12:00 noon on August 19, 2008.  (DSOF ¶ 139; Exh. 21, attachment 2)   Defendant Dauch was not working in the LBJ Intake when the search of T12-A Pod commenced at 9:12 p.m. (DSOF ¶¶ 118-120, 140)  Moreover, Sergeant Dauch is not, and was not in August 2008, a member of SRT.  (DSOF ¶ 135; Exh. 21, doc. 161-8 at 2-4)

### A. Sexual Assault - Defendant Dauch

Section 1983 provides, in pertinent part, that "(e)very person who, under color of any statute of any state . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. A public official deprives another of a constitutional right, within the meaning of § 1983, when that person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  When making the causation determination, a district court "must take a very individualized approach which accounts for the duties, discretion, and means of each defendant."  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). A plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and that defendant's conduct.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Defendants do not dispute that a police or detention officer may be liable under § 1983 for inappropriate sexual contact with a pretrial detainee or arrestee. *Fontana v. Haskin*, 262 F.3d 871, 878 (9th Cir. 2001) (concluding police officer's "sexual verbal and physical predation against a handcuffed arrestee" on ride to police station was Fourth Amendment violation); *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998) (plaintiff's

belief that prison employee's brief touch to plaintiff's buttocks, unaccompanied by sexual comments, was a sexual advance did not create a triable issue as to Eighth Amendment violation when the evidence did not support characterization); *Haberthur v. City of Raymore*, 119 F.3d 720 (8th Cir. 1997) (concluding that plaintiff raised a colorable claim that an officer's sexual assault of her was "entwined with an abuse of his police authority" and under color of state law where the officer used a police cruiser to follow her home, threatened her with tickets on two occasions, and was on duty and in uniform); *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997) (analyzing plaintiff's claimed rape by a police officer under substantive due process). "Sexual misconduct by a police officer toward another generally is analyzed under the Fourteenth Amendment [due process clause]; sexual harassment by a police officer of a criminal suspect during a continuing seizure is analyzed under the Fourth Amendment." *Fontana*, 262 F.3d at 878 (citation omitted).

Regardless of which Amendment is applicable to Plaintiff's § 1983 sexual assault claim, Defendants have presented evidence that Defendant Dauch was not on duty on August 19, 2008 when Plaintiff's Pod was searched. Additionally, Defendants have presented evidence that Defendant Dauch has never been an SRT member. In other words, if Plaintiff's constitutional rights were violated, the alleged inappropriate conduct was not committed by Defendant Dauch.[6]

Significantly, Plaintiff has not presented any evidence to create a question of fact for jury resolution that Defendant Dauch was the S.R.T. officer who committed the alleged sexual assault. (Docs. 91, 163) According to Plaintiff, he "view[s] S.R.T. and Defendant Dauch as 'one in the same' as they assert. All of the individuals in police-like uniforms are all simply jail guards to the Plaintiff . . . S.R.T. and Maricopa County detention

---

[6] Because there is no dispute that the alleged strip search in the case was performed by a male, the recent decision, *Byrd v. Maricopa County Sheriff's Dept.*, 629 F.3d 1135 (9th Cir. 2011) (*en banc*), *cert. denied*, ___ U.S. ___, 2011 WL 1231308 (June 6, 2011), addressing whether a cross-gender strip search of a male pretrial detainee by a female cadet in a Maricopa County jail was unreasonable and a violation of the Fourth Amendment, is inapposite to Plaintiff's strip search claim.

officers 'all look alike.'" (Doc. 163 at 5)  Moreover, Plaintiff provides no evidence to support the Second Amended Complaint's allegation that it was "Defendant Dauch [who] commenced to grab [my] genitals and fondle them for several seconds, saying he was 'searching for contraband,' while the Plaintiff's cellmate stood right there." (Doc. 91 at 8, ¶ 34)  Plaintiff cannot rest on his allegations, but must "go beyond the pleadings and by his own affidavit, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (citing Fed.R.Civ.P. 56).

Federal courts have granted summary judgment for defendants in § 1983 cases where a plaintiff could not identify the accountable state actors and the circumstantial evidence of said actors' identities was too attenuated. *Jenkins v. Wood*, 81 F.3d 988, 995 (10th Cir. 1996) (affirming summary judgment in favor of defendant officers on plaintiffs' § 1983 excessive force claims arising from search of plaintiffs' home pursuant to warrant where plaintiffs could not identify officers who had applied excessive force and evidence simply revealed that defendant officers were in plaintiffs' home when alleged violations occurred); *Thornton v. Spooner*, 872 F.2d 1029 (6th Cir. 1989) (affirming summary judgment on § 1983 excessive force claim arising out of plaintiff's arrest where plaintiff was unable to identify officer who allegedly pushed him into police car); *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1986) (directed verdict upheld for individual defendant officers in a § 1983 action where the plaintiffs could not identify the officers alleged to have violated their constitutional rights); *Hill v. Algor*, 85 F.Supp.2d 391, 404 (D.N.J. 2000) (summary judgment for defendant officer granted when plaintiff conceded he could not "identify any of his attackers, because he 'put [his] head down.'"). Similarly, Plaintiff has not linked his allegations regarding the sexual assault to a particular defendant and his claim against Defendant Dauch must fail. *Anderson*, 477 U.S. at 248.

**B.  Sexual Assault - Defendant Arpaio**

Plaintiff also asserts that Sheriff Arpaio is liable for the alleged sexual assault in his official and individual capacity. (Doc. 91)

1    "Government officials may not be held liable for the unconstitutional conduct
2    of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, __ U.S. __,
3    129 S.Ct. 1937, 1948 (2009). Instead, Plaintiff "must plead that [Arpaio], through [his] own
4    individual actions, has violated the Constitution." *Id. See also, Torres v. City of Los Angeles*,
5    548 F.3d 1197, 1206 (9th Cir. 2008). Individual liability hinges upon a defendant's
6    participation in the deprivation of a constitutional right. *Larez v. City of Los Angeles*, 946
7    F.2d 630, 646 (9th Cir. 1991). This participation may involve setting in motion acts that cause
8    others to inflict a constitutional injury. *Id*. For the Court to hold Arpaio liable in his
9    individual capacity, Plaintiff must demonstrate: (1) that Arpaio's "own culpable action or
10   inaction in the training, supervision, or control of his subordinates" caused the constitutional
11   injury; (2) that Arpaio "acquiesce[d] in the constitutional deprivations of which [the]
12   complaint is made;" or (3) that Arpaio's conduct showed a "reckless or callous indifference
13   to the rights of others." *Id.* (internal citations omitted). Plaintiff has not made this showing.

14         Plaintiff has neither alleged, nor adduced any evidence, to suggest that Arpaio
15   personally took any action that resulted in a violation of Plaintiff's constitutional rights. The
16   allegations in Plaintiff's Second Amended Complaint do not change this conclusion. Plaintiff
17   did not submit any specific allegations or evidence to indicate that Sheriff Arpaio knew that
18   Plaintiff was improperly touched during a strip search. Plaintiff has not demonstrated that
19   Sheriff Arpaio was directly involved in the strip search in any way. Sweeping conclusory
20   allegations are not sufficient to prevent summary judgment. *Leer*, 844 F.2d at 634. Here,
21   the evidence does not reflect a genuine issue of material fact that Sheriff Arpaio participated
22   in the alleged constitutional violation, that he directed it, or that he showed a "callous
23   indifference" to Plaintiff's rights. *Edgerly v. City & County of San Francisco*, 599 F.3d 946,
24   961-62 (9th Cir. 2010) (district court properly dismissed plaintiff's § 1983 claims against
25   police supervisor because "[n]o reasonable trier of fact could find that Schiff had any
26   personal involvement in the incident because he was not aware of the arrest or [illegal strip]
27   search until after they were completed, when he authorized the Officers to cite and release
28   [plaintiff]."); *Oliver v. City of Berkley*, 261 F.Supp.2d 870, 880 (E.D.Mich. 2003) (summary

judgment for supervisor granted because plaintiff did "not allege, nor proffer evidence, that Chief Henderlight participated in, encouraged, implicitly authorized, or knowingly acquiesced in Officer Smith's May 3, 1998 alleged sexual assault of plaintiff[,]" when she was arrested for D.U.I.). Summary judgment will be granted on the individual-capacity claim against Sheriff Arpaio in Count II.

Plaintiff also sued Sheriff Arpaio in his official capacity. To maintain his official-capacity claim, Plaintiff must establish that (1) he was deprived of a constitutional right and (2) Sheriff Arpaio had a policy, practice, or custom that, (3) amounted to deliberate indifference to the constitutional right, and (4) was the "moving force" behind the constitutional violation. *Mabe v. San Bernardino County*, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (quoting *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996)).  Plaintiff has not demonstrated that a policy, practice, or custom was the "moving force" behind any alleged constitutional violation against Plaintiff.  Without evidence sufficient to establish the last two elements - an unconstitutional policy or custom that was the moving force behind the violation - Plaintiff's bare allegations fail. Therefore, summary judgment will be granted on Count II against Sheriff Arpaio in his official capacity.

## VI. Conclusion

The Court is not obligated to "'scour the record in search of a genuine issue of triable fact.'" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted). Instead, the Court relies on "'the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.'" *Id.*; Fed.R.Civ.P. 56(e)(2). "As the Seventh Circuit observed in its now familiar maxim, 'judges are not like pigs, hunting for truffles buried in briefs.'" *Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)) (alteration omitted). Nevertheless, the Court has carefully reviewed Plaintiff's unverified Second Amended Complaint and summary judgment response in search of a triable issue. (Docs. 91, 163)  Having found none, the Court will grant Defendants' Motion for Summary Judgment.

Accordingly,

1    **IT IS ORDERED** that the Motion of Defendants Sheriff Joseph Arpaio and

2    Darren Dauch for Summary Judgment, doc. 159, is **GRANTED**.

3    **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to

4    terminate this action and enter judgment accordingly.

5    Dated this 7th day of June, 2011.

Lawrence O. Anderson
United States Magistrate Judge